# EDWARD S. WILSON

*v.*

# ARMILDA C. HÆCKER *et al.*

1. PAROL EVIDENCE—*to show fraud in sale of land.* Although a contract respecting the sale or exchange of lands may be evidenced in writing, in a suit to cancel the same for fraud, consisting of false representations made to induce the trade, the rule that parol evidence is inadmissible to contradict, vary or add to the writings made, does not apply.

2. RESCISSION OF CONTRACT—*for false representations.* Where parties agree, in writing, on an exchange of Illinois land for Texas lands, to exchange back and annul the contract if the representations made in regard to the lands are not true, a court of equity will decree a rescission if it appears that the party owning the Texas lands made representations as to the location, value, etc., material in their character as to such lands, which were not true, and this, as to subsequent purchasers, either having notice of the facts, or where the conveyances to them are colorable.

3. SAME—*when party entitled to taxes and incumbrance paid.* Where, on an exchange of lands, one of the parties agreed to discharge a mortgage on

the land he received, of $300, for certain personal property which he also received, which was not worth $300, and he also paid taxes on the land, it was *held*, that on decreeing a rescission for fraudulent representations on his part, the complainant should be required to pay him the amount of the taxes, and the $300, less the value of the personal property he had received, the agreement to pay the mortgage debt for the personal property being made in expectation that the exchange of lands should stand.

4. INJUNCTION—*damages on dissolution.* Where a grantor of land is enjoined from selling or incumbering the same, until an abstracted deed can be restored, and he files a cross-bill to rescind the sale for fraud, in which he succeeds, and the injunction is dissolved on the hearing of the original and cross-bills, without any prior notice, and it appears he was put to no greater expense than was necessary to prepare his own case under the cross-bill, it will not be a proper case for awarding damages on the dissolution of the injunction.

APPEAL from the Circuit Court of Marion county; the Hon. AMOS WATTS, Judge, presiding.

Mr. B. B. SMITH, for the appellant.

Messrs. SHAW, COOPER & BRYAN, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The original bill, brought in this case by Edward S. Wilson, September 24. 1873, sets out, that on May 3, 1873, the defendants, Armilda C. Hæcker and William J. Hæcker, her husband, sold to Thomas J. Christy the lands in the bill described, situate in Crawford and Jasper counties. in this State, and delivered the deeds therefor, which were filed for record by Christy; that Christy afterward sold the lands to Hiram Christy and B. F. Williamson, the sale to the former being on May 10, 1873, and to the latter May 12, 1873; that the last named parties sold the lands to the complainant on May 30, 1873, and that he owns the lands in fee; that the deeds from the Hæckers to Thomas Christy, after being filed for record, were abstracted from the recorder's office before being recorded, charging it to have been done by William J. Hæcker, or some one acting for him, and praying for an injunction to restrain the Hæckers from incumbering or disposing of the lands; that

the title to them be declared to be in the complainant, and that the deeds be restored.

The defendants answered, denying the allegations of the bill, and filed their cross-bill setting up that they conveyed the lands described to Thomas J. Christy, in exchange for certain lands in Callahan county, Texas, which said Christy at the same time conveyed to them; that such exchange was effected and the conveyance obtained from defendants through and by means of various false and fraudulent representations, setting them out, made by Christy, respecting the title, value, situation, quality, etc., of the Texas lands, and that it was a condition that if the representations of Christy should prove to be untrue, the conveyance should be void; that the representations made by Christy were false and fraudulent; that soon after the trade William J. Hæcker went to Texas to see the lands, and found all such representations to be false; that the lands belonged to Armilda C. Hæcker; that Wilson, the complainant in the original bill, had brought a suit in ejectment to recover the possession of the lands described therein. The cross-bill charges that the conveyances by Thomas J. Christy to Hiram Christy and B. F. Williamson, and by them to Wilson, were fraudulent and without consideration, and that Wilson had full notice of the equities of the Hæckers, and prayed an injunction restraining Wilson from prosecuting his ejectment suit, that the title to the lands conveyed by the Hæckers to Thomas J. Christy be declared to be in the former, and conveyance thereof be decreed to them. The two Christys and Williamson were made parties defendant with Wilson to the cross-bill,—who all answered, denying all allegations of false and fraudulent representations, or knowledge thereof. Temporary injunctions were granted as prayed for in the original and cross-bills.

Upon final hearing on proofs taken, the court below dismissed the original bill and decreed the relief asked for under the cross-bill, and Wilson appealed to this court.

At the time of the transaction—the trade by William J. Hæcker and wife with Thomas J. Christy, of the Illinois lands

of the former for the Texas lands of the latter, and the conveyance from Hæcker and wife to Christy, of the Illinois lands—the following agreement in writing was executed between the parties, viz:

"*May* 3, 1873.

" We, William J. Hæcker, agent for Armilda C. Hæcker, and Thomas J. Christy, having traded lands, hereby agree that if titles are not perfect and as represented before trading, that we are both ready and willing to exchange back, rendering and making the trade null and void.

"W. J. Hæcker,

"Attest:        "T. J. Christy."

"D. N. Deems."

There is considerable proof in the record offered for the purpose of showing want of title in Thomas J. Christy to the Texas land, and numerous objections are taken to the competency of different items of proof so offered.

We will save a discussion of these objections by dismissing this branch of the representations, deeming that there is sufficient ground of relief against the deed made by Hæcker and wife, on the score of the other representations which appear in the case.

According to the strict terms of this written stipulation, the case for exchanging back and annulling the trade, might seem to be limited to misrepresentations as to title. But the proof makes it clear that the actual agreement made was not so confined, but that it extended to the representations in other respects in regard to the Texas land. And here the objection is made, that no proof of oral representations can be received at variance with, or in addition to, the writing made. It is well settled, that in a case where fraud is involved, and it is sought to prove that, the rule that parol evidence is inadmissible to contradict, vary or add to a writing made between parties, does not apply.

It appears that at the time of this contract for the exchange of lands, the Illinois lands, the title to which was in Mrs. Hæcker, were improved, and Hæcker and wife resided upon

them, and have done ever since; that it was their intention to dispose of all their property in this State and move to Texas on the land acquired from Christy.

The trade was concluded and the deeds exchanged on the 3d day of May, 1873. On the 6th of the same month William Hæcker, the husband, started for Texas to see the land got from Christy; went by railroad as far as Dallas, Texas, from there by wagon forty miles to Fort Worth, and found that the distance from there to the land was from 160 to 200 miles. He then returned, arriving back on the 15th of May. He then told Christy the trade was a fraud, and requested him to cancel the same, which Christy would not do. Hæcker then sued out a warrant against Christy and had him arrested on a charge of swindling. A trial was had on the charge before a justice of the peace on the 19th of May, on which occasion Wilson, the appellant, as counsel, defended Christy, and the several witnesses who were present at the time of the trade gave testimony detailing the representations then made by Christy. It was after this time, viz: May 30, when Wilson purchased from Hiram Christy and B. F. Williamson.

The Illinois lands were parted with by Hæcker and his wife in exchange for the Texas land conveyed to them by Thomas J. Christy. There were 2047 acres of the Texas land, situated in Callahan county, Texas, in the north-western portion of the State. As respects the proof in regard to misrepresentations, it may be regarded as fairly established by a preponderance of evidence, that none of the parties, or persons present at the time of the making of the trade, knew anything about the Texas land except Christy, who represented that he had been upon the land, that it was fine land, seven hundred acres of it good timber, good coal mines upon it, worth $5 an acre; that he paid for it $1600 in money and a house and seven or eight lots in Sherman, Texas; that there was no danger from hostile Indians; that upon Mrs. Hæcker suggesting an objection on this account, he said it was as far from hostile Indians as that part of Illinois; that Callahan county was thinly settled with whites from two to five miles apart; that there was a railroad

23—85TH ILL.

survey through the land, and the railroad would be completed through the land in the autumn; that it was then completed to within a short distance from Fort Worth; that Fort Worth was from forty to sixty miles from the land. That to the contrary thereof, it was shown that Callahan county was about one hundred and fifty miles from Fort Worth; that it was not less than one hundred and twenty-five miles from any railroad in 1873; that there had been but a preliminary survey of the railroad made through the county; that the railroad referred to was located in 1873, at least thirty miles north from the county; that the county was not organized in the spring of 1873; t! at there·was no permanent settlement in the county at that time, the nearest white settlement being about thirty miles from the county line; that it was then regarded a dangerous county to live in on account of Indian raids; that surveyors then would not trust themselves alone there, but required an armed escort for their protection; that there was then no sale of lands there to actual settlers; that Christy gave for the Texas land a patent wind-mill right for certain States. There was no definite testimony in regard to the quality of this particular land, no witness that testified ever having seen it.

We think there was full warrant in finding, from the testimony, that there were false and fraudulent representations made by Christy in regard to the land in the material particulars above named, whereby the appellees were induced to make the conveyance which they did to him, and that there was good cause for setting aside the conveyance on such ground.

The appellant, Wilson, we regard as fully chargeable with notice of the fraud.

It is claimed, however, that Hiram Christy and Williamson, the grantor of appellant, were not affected with any such notice, and that want of notice on their part will be a protection to appellant, notwithstanding notice to himself. This would be so, if Hiram Christy and Williamson were *bona fide* purchasers, for a valuable consideration, from Thomas J. Christy. Hiram Christy was the father, and Williamson the

brother-in-law, of Thomas J. Christy. There was quite a rapid shifting of the property from the latter into the hands of the two former, and from them to appellant, the counsel of Thomas J. Christy in the criminal branch of this litigation. And without entering into the evidence, we are of opinion that the court was justified in finding, from it, that Hiram Christy and Williamson were not purchasers in good faith, for a valuable consideration, and that the conveyances to them were but colorable.

While thus upholding the decree in its essential part, of setting aside the conveyance made by the appellees and perpetuating the injunction under the cross-bill, there are portions of the decree which we look upon as erroneous.

The proof showed that appellant had paid a mortgage incumbrance of $300 which was resting upon a portion of the Illinois lands at the time appellees conveyed them to Thomas J. Christy. It is said that Thomas J. Christy received an independent consideration for the discharge of this mortgage, viz: some personal property. It does appear that at the time of the trade and conveyance, Thomas J. Christy did receive from appellees certain articles of personal property, for which he agreed to discharge the mortgage. But this was connected with the trade for the land as a part thereof, and must have been upon the supposition that Christy was to have the lands, which were conveyed to him. There is reason to believe, from the evidence, that the value of this personal property was much less than the amount of the mortgage, and that Christy would not have agreed to discharge the mortgage for the consideration of the personal property, except in view that the entire contract was to stand. If the contract is to be set aside in its main part, the conveyance of the lands, it should be so also as to the incidental part, of the discharge of this mortgage, and there should have been an allowance to appellant of the amount paid in discharge of the mortgage, less the value of the articles of personal property received. It also appears, that appellant paid upward of $90 taxes on the lands. This should have been allowed to him.

If there be any difficulty in appellant not having set up this payment of taxes in his answer, as suggested, he will have leave to amend his answer in the court below.

The court below, on the final decree, dissolved the injunction before granted on the original bill, and assessed against appellant $300 damages by reason of the injunction.

There is no evidence in the record to sustain this assessment. It is essential that there should be evidence preserved in the record to support the decree awarding damages in the case of such an assessment. *Forth* v. *Town of Xenia*, 54 Ill. 210. But we do not consider this a case for damages. It is not perceived what damage appellees would suffer from being restrained from selling or incumbering the land while the title was in litigation. As to any expenses of procuring the dissolution of the injunction, the injunction was not dissolved, or any motion made therefor, until upon the final decree upon the original bill and cross-bill. The prosecution by appellees of their cross-bill was necessary, in order to obtain for them the needed affirmative relief of setting aside the conveyance made by them, and we perceive no expense incurred about the dissolution of this injunction separable from, and not properly chargeable as the necessary expenses incurred by the appellees in and about revesting themselves with the title to the lands.

The decree is reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*