### NOVEL BLAIR

*v.*

### JAMES N. READING *et al.*

*Filed at. Ottawa May 14, 1881—Rehearing denied September Term, 1881.*

1. ASSIGNMENT OF ERROR—*when sufficiently definite.* An assignment of error in a chancery suit, that " the records and proceedings are otherwise uncertain, unjust and illegal," is sufficiently definite to present for consideration objections to the decree and proceedings touching their legality and regularity.

2. CHANCERY PRACTICE—*powers on hearing in vacation.* The chancellor on a hearing at chambers in vacation can exercise no judicial function. Where there is an agreement that the cause may be heard at chambers in vacation, the chancellor can make no order in the case that will bind the parties, as a judicial act or otherwise, without their assent, and which is not strictly in pursuance of their agreement, if at all.

3. An agreement for a hearing in vacation is voluntary, and can not in any view become binding upon the parties, except so far as it is executed with their assent, and in strict conformity with its terms. The judge is powerless to enter any order in vacation in any manner changing the *status* of the case, and such power can not be conferred by mere agreement of the parties.

4. A judge, upon a hearing at chambers in vacation, has no power to entertain an application to dismiss the bill as to a particular defendant, nor to require the complainant to answer a cross-bill filed since the last term, nor to pass upon the sufficiency of the answer to such bill, and enter a decree *pro confesso* on neglect to file further answer *instanter.*

5. It is a fundamental principle that courts can exercise judicial functions only at such times and places as are fixed by law, and that the judges of courts can enter no orders in vacation except such as are expressly authorized by statute.

6. SAME—*error to render decree without hearing.* It is clearly error to render a decree on the merits in a chancery suit at issue by the pleadings without any hearing or submission; and where the only hearing was in vacation, if that is illegal and to be treated as a nullity, the decree, though entered in term time, will be erroneous.

7. SAME—*decree on cross-bill without answer or rule to answer.* A decree on a cross-bill, without either an answer or a rule to answer, is clearly erroneous, and when the only rule to answer is void, as having been made in vacation, the decree founded upon it is of necessity erroneous.

8. SAME—*right to dismiss bill as to one defendant before filing of cross-bill.* A complainant has the right at any time before hearing to dismiss his bill at his own costs, either as to all or a part of the defendants, in the absence of any statutory regulation. Where the complainant moves to dismiss his bill as to a defendant before such defendant asks leave to file a cross-bill, the motion to dismiss has the precedence, and should be first decided.

9. The statutory provision that the complainant shall not be allowed to dismiss his bill after cross-bill has been filed, without the consent of the defendant, does not operate to prevent the dismissal of the bill as to a defendant not joining in the cross-bill, or having filed one himself. No defendant can avail of this statute unless he has, by himself or in connection with other defendants, filed a cross-bill before application is made to dismiss.

10. CHANCERY—*jurisdiction over proceedings at law.* While a court of equity under a proper state of facts may restrain a party from prosecuting a suit at law, and for sufficient reasons may declare such suit and all proceedings under it null and void, it has no power to otherwise assume control over such proceedings by directing what steps shall be taken, and any decree assuming to exercise such power is erroneous. Courts of equity have no right to sit as a court of error for the review of proceedings at law. It is, therefore, error to order the dismissal of a replevin suit with an order for the return of the property. The return of the property is a question alone for the court of law.

11. SAME—*decree requiring one not a party to take and return property replevied.* A clause in a decree for the dismissal of an action of replevin, with a *retorno habendo*, which in case of a neglect to make return of the property directs the coroner, upon being presented with a certified copy of the decree, to seize and return the property, if found in his county, is erroneous. The coroner not being a party is not bound by the decree, and as an officer of the court he is not authorized to do the act required, except under process of the court.

12. PROCESS—*what is process, which will protect officer.* An officer can not seize property replevied and return the same to the defendant in replevin, except under process. A certified copy of a decree directing him to do so is not process, within the meaning of the constitution, which requires all process to run in the name of the people.

13. INJUNCTION—*measure of damages on dissolution.* The damages assessed upon the dissolution of an injunction should be only for the additional expense incurred in procuring the dissolution, over and above those necessarily incurred in preparing the case for hearing on the merits.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal to the Circuit Court of Grundy county; the Hon. JOSIAH MCROBERTS, Judge, presiding.

Novel Blair, plaintiff in error, brought to the March term, 1876, of the Grundy county circuit court, a bill in chancery against James N. Reading, Lyman B. Ray, John Schroder and Henry L. Miller, defendants in error, alleging an indebtedness from Reading and Ray to complainant, on various accounts and in divers amounts, and praying for an account; and also charging that a certain judgment obtained by Ray against complainant for $2569.20, was obtained upon a fictitious indebtedness, and asking the same to be set aside as fraudulent and void, and that all proceedings under it be perpetually enjoined, and also praying that a certain chattel mortgage, given to secure the same fictitious indebtedness, be set aside and declared null and void, etc.

It appears, from the evidence, that Novel Blair and his son, Benjamin P. Blair, persons of color, about the 1st of January, 1871, leased a farm of James N. Reading, and moved upon it with their effects, and carried on a rather extensive farming business for a number of years. On the 8th of February following, Benjamin P. Blair executed to James N. Reading a note for $450, due two years after date, and secured it by chattel mortgage on the personal property on the farm. In March, 1872, the Blairs took up this note by executing another signed by both of them, and secured in the same way. This latter note was made payable to Ray, a merchant, and son-in-law of Reading, who, as the latter claims, had an interest in the note on account of goods furnished and to be furnished the Blairs. On June 1, 1872,

this note and mortgage were taken up and new ones given, in which the amount of indebtedness was increased to $1331.11, which, in their turn, on May 12, 1873, were taken up and a new note and chattel mortgage given by Novel Blair alone, for $2569.20, with a power of attorney annexed to the note to confess judgment. This last note was made payable to Ray one day after date, and, as is claimed by defendants in error, was given for the benefit of Ray, Reading and Miller. On May 25, 1875, Ray confessed a judgment on the notes last mentioned, and placed an execution issued thereon in the hands of Schroder, as sheriff, to execute. Schroder took possession of a large amount of the mortgaged property, which Novel Blair replevied on the 8th of February, 1876. A lot of corn, amounting to 1400 bushels, was also levied upon as the property of Blair, which was also replevied by Lawrence & Hill, who claimed as assignees of Blair. On the 18th of March, 1876, the above mentioned judgment was opened, and Blair was permitted to plead to the merits. An injunction, upon the application of Blair, was awarded, restraining defendants in error from proceeding in any manner under said judgment or chattel mortgage. On the 23d of the same month Ray filed a cross-bill in the cause, making Novel Blair, James N. Reading and Henry L. Miller parties, praying for a decree for amount of the judgment on the note, and a return of the mortgaged property, etc. The cause was referred to a special master, to take and report the proofs. On the 8th of December, 1876, Blair filed an answer to Ray's cross-bill, denying most of the material charges contained in it, and on the same day the cause was set for hearing at chambers on the 18th of the month, by consent of parties.

On the convening of the parties and the judge on the 18th, pursuant to this arrangement, Novel Blair, by a written motion, sought formally to dismiss his bill as to James N. Reading, but the judge refused to allow the dismissal, and afterwards, on the 21st, against the objections of Blair, per-

mitted Reading to file a cross-bill in the cause, and thereupon a rule was entered against Blair to answer the same by half-past one o'clock of the same day. Blair complied with the rule, under protest, by filing a general denial of the matters set up in the cross-bill. Exceptions having been sustained to his answer, he was ruled to make further answer instanter, and on his failure to do so he was called and defaulted, and a decree *pro confesso* entered against him.

Without any other hearing or further steps being taken in the case, at the March term, 1877, a formal decree was entered, based upon the foregoing hearing at chambers, and the several interlocutory orders and pleadings filed pending such hearing, dismissing Blair's original bill and granting relief upon Ray's cross-bill substantially as prayed. The court also rendered a personal decree against Blair on Reading's cross-bill for $261, on account of an individual debt alleged to be due Reading, for which a decree *pro confesso* had already been rendered in vacation, as above stated, it being the only relief granted under it. The cross-bill of Reading contains no averment showing that the claim for which this decree for $261 was rendered, was in any manner connected with the matters being litigated in the original bill.

On appeal to the Appellate Court the foregoing decree was affirmed, and plaintiff in error brings the record to this court for review.

The tenth assignment of errors in the Appellate Court was: "The record and proceedings aforesaid are otherwise uncertain, unjust and illegal."

Mr. W. T. HOPKINS, and Mr. A. W. BULKLEY, for the plaintiff in error:

The circuit court erred in not permitting complainant to dismiss his bill as to defendant Reading. The complainant, at any time prior to a decree, has the right, unless a cross-bill has been filed, to dismiss his bill as a matter of course. *Curtis* v. *Lloyd*, 4 M. & C. 194; *Simpson* v. *Brewster*, 9

Paige, 245; 1 Dan. Ch. Pr. (5th Am. ed.) 793; *Mohler* v. *Wiltberger*, 74 Ill. 163.

The circuit court erred in permitting Reading to file his cross-bill at the time and in the manner as shown by the record. The proper time for filing a cross-bill, when such bill is necessary, is at the time of putting in the answer to the original bill, and before the issue is joined by the filing of a replication. *Irving* v. *DeKay*, 10 Paige, 319; *Braman* v. *Wilkinson et al.* 3 Barb. 151; *Wiley et al.* v. *Platter*, 17 Ill. 538; *Roberts* v. *Peavey*, 9 Foster, 392; *Aylet* v. *Easy*, 2 Ves. Sr. 336; *Cartwright* v. *Clark*, 4 Metc. 104; Barb. Ch. Pr. (2d ed.) vol. 2, p. 130.

A cross-bill is treated as an auxiliary suit, or as a dependency upon the original suit, and may be sustained only on matter growing out of the original bill. *Daniel* v. *Morrison*, 6 Dana, 186; *Rutland* v. *Paige*, 24 Vt. 181; *Rubber Co.* v. *Goodyear*, 9 Wall. 807; *Ayres* v. *Carver et al.* 17 How 591; Story's Eq. Pl. (8th ed.) sec. 398.

If a cross-bill seeks relief, it must be equitable relief. Story's Eq. Pl. secs. 398–629; *Calverly* v. *Williams*, 1 Ves. Jr. 211; *Toby* v. *Foreman*, 79 Ill. 489.

The decree is erroneous in several respects. It assumes control of the suits at law, and directs the steps to be taken. The judgment at law against Blair is left in full force, and he is required to return the property given to secure the debt on which it is based, without any provision that its proceeds shall apply upon the judgment. See *Hubbard* v. *Hobson*, Breese, 195.

If the defendants have not incurred any expense about the dissolution of the injunction, separable from and not properly chargeable as the necessary expenses incurred by them in obtaining the relief sought under their cross-bills, then they have sustained no damages, and should be awarded none. *Alexander* v. *Colcord*, 85 Ill. 328; *Collins et al.* v. *Sinclair et al.* 51 id. 330; *Elder et al.* v. *Sabin et al.* 66 id. 131;

Steele et al. v. Thatcher, 56 id. 258; Jevne & Alimini v. Osgood et al. 57 id. 346.

Messrs. HILL & DIBELL, for the defendants in error:

An order of dismissal can not be entered except in term time. Consent can not confer jurisdiction, nor authorize a judge in vacation to exercise the powers of a court. Bancroft v. Eastman, 2 Gilm. 264.

Until the recent statute of 1874, (ch. 37, sec. 32,) conferring the power to hear and determine motions to dissolve injunctions in vacation, judges out of term had no power to vacate orders granting writs of injunction or to dissolve an injunction. Welch v. People, 38 Ill. 20.

The defendant Ray had filed a cross-bill long before the attempt to dismiss, and under the statute no dismissal could be had without consent. Sec. 36, ch. 22, Rev. Stat. 1874.

If the right of dismissal exists after the filing of a cross-bill, it would operate to carry with it the cross-bill, the latter being regarded as a mere adjunct, and all constituting but one suit. Fleece v. Russell, 13 Ill. 32; Elderkin v. Fitch, 2 Ind. 90; Slosson v. Wright, 14 Vt. 208; Reed v. Kemp, 16 Ill. 448.

Conceding that the judge's orders in vacation were void, still Reading's cross-bill was properly filed, for a cross-bill is a matter of right, and may be filed at any time after answer, either in term time or in vacation, and without leave. Jones v. Smith, 14 Ill. 229; Wiley v. Platter, 17 id. 540; Beauchamp v. Putnam, 34 Ill. 578.

Taking default after answer filed harms no one, if the record shows the final hearing was on the answer of the defendant so irregularly defaulted. Hawke v. Snydacker, 86 Ill. 202.

The judgment by confession for $2574 was properly confirmed. The judgment had never been vacated, but only opened with leave to plead, and therefore still stood as a valid judgment and lien. Lake v. Cook, 15 Ill. 355.

It was necessary to protect the officer levying in a suit by a stranger, to show a valid judgment upon which the writ issued. *Hartman* v. *Cochrane*, 2 Bradw. 594; *Johnson* v. *Holloway*, 82 Ill. 335.

Although a party may have several remedies, he can have but one satisfaction. *Vansant* v. *Allison*, 23 Ill. 33; *West* v. *Fleming*, 18 id. 248.

There is no assignment of error in this or the Appellate Court questioning the action of the circuit court in any of the particulars considered. The tenth assignment in the Appellate Court is too general and indefinite.

The assessment of the damages upon the dissolution of the injunction was authorized and proper. *Darst* v. *Gale*, 83 Ill. 144.

Mr. E. F. BULL, also for the defendants in error:

This bill was not filed by a creditor to set aside a fraudulent mortgage and judgment, but is filed by the man who gave what he avers and swears was a fraudulent note and mortgage, for the express purpose of defeating his judgment creditors. He knew its character, he says, and the purpose for which it was given. No amount of ignorance or stupidity can give a man guilty of such conduct any standing in a court of equity, even if the allegations of his bill were true. But that they were untrue is conclusively shown by the evidence. *Fitzgerald* v. *Forristal*, 48 Ill. 228; *Dunning* v. *Bathrick*, 41 id. 425.

It is claimed that the court erred in refusing to allow complainant to dismiss as to Reading.

The complainant could not dismiss, because Ray had filed a cross-bill in which Reading was a necessary party. *Haare* v. *Harris*, 11 Ill. 24; *Smith* v. *Rotan*, 44 id. 506; *Spear* v. *Campbell*, 4 Scam. 424; *Alexander* v. *Hoffman*, 70 Ill. 114; *Hopkins* v. *Roseclare Lead Co.* 72 id. 373.

It is complained that the court found $261 due from Blair to Reading. This was right and proper. This bill was filed

for an accounting. That was the object, aim and scope of the bill; and in bills of that character, if a balance is found in favor of the defendant, he is entitled to a decree for such balance without the aid of a cross-bill. Story's Eq. Jur. sec. 522; Story's Eq. Pl. sec. 394, and note 1; *Ayliffe* v. *Murray*, 2 Atk. 59.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

Quite a number of objections are urged against the propriety, regularity and legality of the decree in this case; but it is claimed, as to most of them, the assignment of errors in the Appellate Court is not sufficiently broad to cover them. The tenth assignment of error in that court questions the justness and legality of the record and proceedings in the circuit court generally, and we are of opinion it is sufficiently definite to present for our consideration all the objections urged against the decree and proceedings in that court. As the decree will have to be reversed for errors manifest on the face of it, we do not deem it proper to enter upon a discussion of the evidence, or to express any opinion upon the merits of the controversy, so that upon a rehearing the efforts of the court and parties to arrive at a just and proper conclusion upon the real merits of the controversy may not be embarrassed by anything we may here say.

The circumstances under which this case was tried, in our judgment, afford sufficient ground for remanding the cause for a rehearing, if there were no other reasons for doing so.

After the issues were made up, and the cause was standing for a hearing upon the proofs already taken and reported by a special master, the parties mutually agreed that the cause might be heard by the judge at chambers in vacation. Now, it is very clear that the judge at such a hearing could exercise no judicial function. He could not, therefore, make any order in the case which would be binding upon the parties, as a judicial act or otherwise, against their assent, which was not strictly in pursuance of their agreement, if at

all. It therefore follows, the judge upon the hearing at chambers had no power to entertain an application to dismiss complainant's bill as to Reading, and *a fortiori* had no power or authority to require Blair to answer Reading's cross-bill, or to pass upon the sufficiency of the answer which he had filed under protest; and least of all had he any authority to pronounce a decree *pro confesso* against Blair, on his failure to further answer said cross-bill, in obedience to a rule to answer *instanter*, which he had no power to enter.

It is a fundamental principle that courts can exercise judicial functions only at such times and places as are fixed by law, and that the judges of courts can enter no orders in vacation, except such as are expressly authorized by statute. The legislature has provided that the judges of circuit courts and the Superior Court of Cook county may, upon due notice, entertain motions in vacation to dissolve injunctions, permit amendments of pleadings, etc., and they may also enter judgments in causes which have been taken under advisement; but these provisions have no application to the case in hand.

The agreement to a hearing in vacation was voluntary, and could not, in any view, become binding upon the parties, except so far as it was executed with their assent, and in strict conformity with its terms. Whether, if the judge had heard the cause upon the evidence and pleadings as they stood at the time the agreement was entered into, and the parties had appeared and participated in the hearing without objection, and a decree had subsequently been entered up in term time, in pursuance of such hearing, the parties under such circumstances would be estopped from questioning the regularity of the proceedings, is a question which is not presented by this record, and about which we do not feel called upon to express any opinion. Whatever might be the rule in such a case as that, can not affect the result in this case. The parties, in entering into the agreement in question, must be presumed to have known that the judge, in vacation,

would be powerless to enter any orders which would in any manner change the *status* of the case, and that no such power could be conferred upon him by the mere agreement of the parties.

It is, therefore, but reasonable to assume that the parties, by entering into this agreement, intended to bind themselves to nothing further than that the case should be heard by the judge at the time and place specified, upon the issues as then made up, and such evidence as had already been taken and might be produced at the hearing, and that the conclusion reached by the judge upon such hearing might subsequently be entered by the court as the decree in the cause, subject to such exceptions as the parties might see proper to make to the same. But the judge who presided at the hearing seems to have taken a different view of the matter. He clearly acted upon the legal hypothesis that he was clothed with judicial powers to the same extent as if court had been in session. This, as we have already seen, was a misapprehension of the law. Indeed, it is conceded by counsel on both sides, that all orders made by the judge at the hearing were without any authority of law, and therefore void, and upon this very ground the decree is sought to be justified by defendants in error. It is argued, that inasmuch as all the proceedings before the judge in vacation were unauthorized and void, this court must disregard them altogether, just as though they had never taken place, and look only to the decree as finally entered by the court. While this position at first view may seem plausible, yet there are several fatal objections to it. In the first-place, it appears, from the recitals of the decree itself, that it is based upon the hearing in vacation, and not upon any trial or hearing in court, and if that hearing is to be disregarded altogether, then the decree was simply entered up without any hearing at all, for it is manifest there never was any other hearing except the one in vacation, and to render a decree without any hearing or submission at all would clearly be error.

Again, the decree further shows that the hearing was had upon, among other things, the cross-bill of Reading, to which no answer was filed by Blair except the one in vacation; and as no rule to answer was ever entered against him, except that which was entered in vacation, it follows, upon the theory assumed, that the decree upon the Reading cross-bill was rendered, in contemplation of law, without any answer, or even a rule to answer, for the record shows no other rule except that in vacation was ever entered against him requiring an answer, and to enter a decree on a cross-bill without either an answer or rule to answer, would clearly be error. Assuming, then, that the proceedings before the judge were irregular and invalid, it follows that any decree founded upon them would of necessity be erroneous. While we regard the orders of the judge, with respect to the cross-bill and answer thereto, as without authority, and therefore void, yet it does not follow that the cross-bill and answer, when filed in court in the cause, were also void. When properly entitled and filed they became pleadings in the cause, notwithstanding error may have intervened in the manner in which they became a part of the files. Let it, therefore, be admitted that while the orders of the judge in vacation are to be regarded as mere nullities, yet as the cross-bill of Reading, and answer thereto, were filed before the decree was entered, they became upon such filing proper pleadings in the cause, and the court, in rendering its decree, had the right to act upon them, although the answer was filed under protest and in obedience to a rule which the judge had no power to make. Still we are of opinion the decree upon the Reading cross-bill is erroneous; for in that view of the case it would have been the duty of the court, on discovering the cross-bill and answer on file, to have set the case down for a hearing, at least as to the cross-bill, which was not done. Moreover, assuming this view of the law to be correct, it would follow, if Blair had the right, under the law, to dismiss his bill as to Reading at the time of his application to

do so, his written motion filed for that purpose, having been made the day before the filing of the cross-bill, had the effect of defeating altogether the right to file the cross-bill. The motion to dismiss being first in time, had precedence of the motion to file the cross-bill, and should have been disposed of first, according to the rights of the parties as they appeared when the motion was made.

It is laid down in Daniell's Chancery Practice, without any modification, that a complainant has the right, at any time before hearing, to dismiss his bill at his own costs, either as to a part or all of the defendants, and this, in the absence of any statutory provisions on the subject, is unquestionably the correct rule. 2 Daniell's Ch. P. 927; *Dixon* v. *Parks,* 1 Ves. Jr. 402; *Curtice* v. *Lloyd,* 4 Mylne & Craig, 194.

Our statute, however, has provided, that "no complainant shall be allowed to dismiss his bill after a cross-bill has been filed, without the consent of the defendant," and it is claimed by defendants in error, that inasmuch as Ray had filed a cross-bill before Blair's application to dismiss as to Reading, the latter, who had filed none at that time, can avail himself of the fact that Ray had, in order to defeat Blair's right to dismiss as to Reading.

The manifest object of the legislature in adopting this provision was to enable any defendant in chancery who might have some equitable right or cause of action against the complainant, growing out of and connected with the matters set up in the complainant's bill, to have all matters of difference connected with the subject matter of litigation fully and finally disposed of at the same time, or at least in the same suit. It certainly could not have been intended, where the parties are numerous and the plaintiff discovers he has improperly joined some of them in the bill, to deprive him of the right of dismissing as to them, merely because one or more of the others have filed a cross-bill, in which the unnecessary parties have not joined or deemed the matter in controversy of sufficient importance to file one on their own

account. Is the complainant bound to keep these parties in court, thereby increasing the costs and expenses of the litigation, merely because some of their co-defendants happen to want to litigate matters in which these unnecessary parties have no concern, and the others possibly withhold their assent to a dismissal merely for the sake of harassing and punishing the complainant? We think not. We are of opinion that no one can avail himself of the statute unless he has, either by himself or in connection with other defendants, filed a cross-bill before the application to dismiss is made. It follows, therefore, that the pendency of Ray's cross-bill to which Reading was not a party complainant, presented no reason why Blair's bill should not have been dismissed. This being so, whether the proceedings in vacation be regarded void or valid, the decree, so far as it is based upon Reading's cross-bill, is erroneous.

The decree upon the cross-bill of Ray is also erroneous in several respects. The decree, after declaring the injunctions in the two replevin suits, and in the action of assumpsit, in which the judgment for $2569.20 had been confessed, dissolved, and after reciting the fact that said judgment had been opened and leave granted to plead to the merits, proceeds in these words: " And in said case of Lyman B. Ray v. Novel Blair, in assumpsit, said motion to open and for leave to plead are ordered to be vacated and set aside, *and said* judgment for said sum of $2574, entered May 25, 1875, confirmed; and it is further ordered that said case of Novel Blair against Ray, Reading and Schroder in replevin, be dismissed out of court, with the customary order for the return of the property replevied."

While a court of chancery, under a proper state of facts, may restrain parties from prosecuting a suit at law, and may declare, for sufficient reasons, such suit and all proceedings under it null and void, yet we are aware of no principle that authorizes it to otherwise assume control over such proceedings by directing this or that step shall be taken in the case,

as was done in the present case. Whether the property replevied should be returned or not, was a question for the exclusive determination of the court of law in which the case was pending. Courts of equity can control proceedings at law only by acting upon the parties, or by annulling their proceedings when consummated. They have no right to sit as a court of error for the purpose of reviewing their proceedings, or of directing what steps shall be taken in them. Courts of law of general jurisdiction have the same control over their proceedings as courts of equity have over theirs, subject to the limitation already stated, and any decree which assumes to exercise such power or jurisdiction over them is erroneous.

Again the decree directs, "that in case of default by said Blair in making such return of the property, the coroner of Grundy county, upon being presented with a certified copy of this decree, seize the said property, if found within his county, and return the same to said Ray, and make due return of his acts in that regard to this court," etc. This provision of the decree is clearly erroneous. The coroner of Grundy county not being a party to the suit, as an individual was not subject to the orders or direction of the court. As an officer he was not authorized to exercise any power or authority over the property replevied, except in obedience to legal process placed in his hands for that purpose, and a certified copy of the decree is in no sense legal process, within the meaning of the constitution. By the provisions of that instrument all process must run in the name of the People of the State of Illinois, and a mere certified copy of the decree would not meet this requirement of the constitution. We fully recognize the power of a court of equity, where it has obtained jurisdiction over property in litigation, to appoint a receiver or other custodian of such property, and clothe him with such power and authority as may be necessary for the management and preservation of the same; but

that is not the case here, and the principle has no application to the facts of this case.

There are other errors of a similar character appearing upon the face of the decree, but we will not consume further time by considering them, as what we have already said is deemed sufficient to present our views upon this subject.

We are also of opinion the assessment of damages, on account of suing out the injunction, is not warranted by the circumstances in this case. The only element of damages which entered into the allowance made by the court, was that of solicitor's fees. The whole amount in controversy was, as shown by the decree, a fraction over $2400, and the court assessed the damages at $600. The propriety of suing out the injunction was never called up or considered by the court until the case was finally considered on its merits. Hence the extra expense of a separate hearing of a motion to dissolve was not incurred, and upon an examination of the record and the general character of the evidence, it is manifest, that so far as any portion of the proofs was necessary or appropriate in obtaining a dissolution of the injunction, with the exception of that which was offered in proof of the damages, it was equally necessary and appropriate to establish the case of defendants in error, irrespective of the injunction. In short, we are of opinion the expenses incurred on account of solicitor's fees in the preparation of the case for a hearing, and in conducting the hearing, would, under the circumstances of this case, have been substantially the same as if no injunction had been sued out at all. At any rate, we are quite clear that the suing out of the injunction did not make a difference of $600,—something near one-fourth of the amount in controversy,—and it is only for the additional expense there should have been a recovery. *Wilson* v. *Hœcker*, 85 Ill. 349.

Without consuming further time in the consideration of other questions raised upon the argument, suffice it to say that outside of the errors already indicated, we are satisfied,

upon a careful consideration of the record, the ends of justice will be subserved by a rehearing of the whole case; and in view of the fact that some of the pleadings seem to. be, when considered in the light of the proofs, to some extent defective, the judgment of the Appellate Court will be reversed, and the cause remanded, with directions to reverse the judgment of the circuit court and remand the cause for a rehearing, with leave to both parties to amend their pleadings and take additional testimony, if they shall be so advised. ·

*Judgment reversed.*

SHELDON, J., concurs in the conclusion.