Argued November 29, reversed with directions December 19, 1951

BROWN, as Adm'r v. MILES et al.

238 P. 2d 761

468

*Bruce Spaulding,* of Portland, argued the cause and filed a brief for appellant.

*W. C. Winslow,* of Salem, argued the cause for respondents. With him on the brief were Norman K. Winslow and Ronald C. Glover, both of Salem.

Before BRAND, Chief Justice, and HAY, ROSSMAN, WARNER and TOOZE, Justices.

TOOZE, J.

James A. Craft, as the widower of Minnie D. Craft, deceased, filed in the probate department of the circuit court of Marion county his petition to have set apart to him the home property occupied by him and decedent at the time of her death as his homestead, pursuant to the provisions of § 19-602, OCLA. The petition was resisted by the executor and the beneficiaries of the last will and testament of decedent. The trial court denied and dismissed the petition. Petitioner appealed to this court. After this appeal was perfected, and on June 21, 1950, James A. Craft died, and Lawrence N. Brown, as administrator of his estate, has been duly substituted as a party.

Minnie D. Craft died testate in Marion county, Oregon, on May 15, 1949, at the age of 79 years. At the time of her death, Mrs. Craft was the owner of various assets, including the real property involved in

this proceeding. In her last will and testament, which was executed on May 17, 1948, and duly admitted to probate on May 19, 1949, the decedent bequeathed to her widower the sum of $1 only.

On July 27, 1949, said widower filed his petition in the estate of Minnie D. Craft, deceased, which, omitting formal parts, reads as follows:

"I

"That your petitioner and said MINNIE D. CRAFT, deceased, were duly married, each to the other, in Lacomb, Linn County, Oregon, on the seventh day of April, 1895, and continuously thereafter, until the fifteenth day of May, 1949, the date of the death of said decedent, were husband and wife; and that ever since the death of said decedent your petitioner has been, and now is, her widower.

"II

"That prior to, and at the time of her death, said decedent was the owner in fee simple of the following-described real property, to-wit:

"Lot No. 5 in Block 'B' of Simpson's Addition to Salem, Marion County, Oregon, according to the duly recorded plat thereof as the same appears of record in the office of the Recorder of Conveyances in Marion County, Oregon.

"III

"That prior to, and at, the time of the death of said decedent, said real property was the actual abode of, and occupied by, said decedent and your petitioner.

"IV

"That said real property consists of one lot, approximately sixty feet by two hundred feet, with a house thereon.

"V

"That at the time of the death of said decedent said real property did not, and now does not, exceed the amount in value of the sum of $3,000.

## "VI

"That prior to, and at, the time of the death of said decedent, said real property constituted, and was, the homestead of said decedent.

## "VII

"That said decedent left her surviving no minor child or children.

"WHEREFORE, your petitioner prays for an order of this honorable court setting apart for him, as the widower of said decedent, the above-described exempt real property; and for such other and further relief as may seem meet and equitable."

To this petition, the Pioneer Trust Company, as executor, and Willie Miles, Anna Miles, and Leta Chrisman, as beneficiaries under the last will and testament of Minnie D. Craft, deceased, filed an answer admitting paragraphs I, II, IV, and VII thereof, denying the other allegations, and affirmatively pleading as follows:

"For a further and separate answer the executor and above named beneficiaries allege:

## "I

"That on the 7th day of September, 1923, decedent and petitioner entered into a written contract, a copy of which is hereto attached, marked 'Exhibit A' and for greater certainty made a part of this answer.

## "II

"That by said contract said decedent and said petitioner divided their properties and thereafter each managed, controlled, looked after and enjoyed his own property separate and apart from the other, and that at the time of the death of the above named decedent and for several years prior thereto said decedent and said petitioner did not live together

as husband and wife, and that the presence of said petitioner on the premises described in his petition on file herein was as a trespasser and was against the wishes and desires and protests of said decedent.

"The executor and these answering beneficiaries, for a second further and separate answer allege:

## "I

"Re-allege all the matters and things set forth and contained in their first further and separate answer set forth above.

## "II

"That on account of the matters and things set forth and contained herein said petitioner has waived his right to claim a homestead and ought to be and is estopped from asserting or attempting to assert any right, title or interest in and to the real property described in his petition, including the right of homestead.

"WHEREFORE: The executor and these answering beneficiaries pray for a decree of this Court dismissing the petition of said petitioner and allowing to the executor and these answering beneficiaries their costs and disbursements incurred herein."

To this answer, petitioner filed his reply denying all allegations thereof inconsistent with the averments of his petition.

The contract referred to in the answer is as follows:

"THIS CONTRACT Made and entered into by and between JAMES A. CRAFT, party of the first part, and MINNIE D. CRAFT, party of the second part,

"WITNESSETH:

"THAT WHEREAS, the parties hereto are husband and wife, and that differences and disagreements have arisen between them so much so as to make their living together as husband and wife unpleasant and especially since the same has grown out of their property rights; and

"WHEREAS, the parties hereto desire to settle all questions of property rights between themselves,

"IT IS, THEREFORE, mutually agreed that all the property, both real and personal, belonging to the parties hereto wheresoever situated shall be settled as follows:

"That the party of the first part is to have the farm belonging to the parties hereto consisting of 164.46 acres, and described as follows:

"The Southwest quarter of the Southwest quarter of Section 28, Lot 1, and the West half of the Northwest quarter of Section 33, all in Township 10, South of Range 1 West of the Willamette Meridian, containing in the aggregate 164.46 acres, in Linn County, Oregon.

which said lands were on the 27th day of August, 1923 conveyed to A. K. McMahan by a deed of said date duly signed, sealed, witnessed, and acknowledged, conveying all the interest of both parties hereto to said A. K. McMahan, and that the said A. K. McMahan shall and he is hereby authorized by both parties hereto to reconvey said land to the party of the first part, or to whomsoever he may direct, together with all of the farm implements now on said place, and all the horses, cattle, sheep, and hay and grain that is now on said farm or may be harvested on the same during the year 1923; also together with any money, notes, accounts, or personal property that may be on hands or belonging to either of the parties, except as hereinafter stated.

"That the party of the second part is to take and accept the following property as her part and

portion under this contract, to-wit, Five Thousand Seven Hundred Forty and no/100 Dollars ($5,-740.00), money being one-half the value of the lands hereinabove described, payment of which is to be made as follows: The party of the first part is to turn over and transfer to the party of the second part his one-half interest in a note and mortgage given by Jennie M. Schildmeyer, also two government Liberty Bonds of Fifty Dollars ($50.00) each, and the remainder in cash, amounting to the sum of Four Thousand Three Hundred Ninety and no/100 Dollars ($4,390.00).

"It is further agreed that each party hereto will not look to the other for any assistance or support, and in the event that either of the parties hereto shall bring a suit for and obtain a divorce, that no claim is to be made for attorneys' fees, support money, suit money, costs, alimony, or any interest in the land belonging to the other; and that in the event a divorce should be granted to either of the parties hereto that no judgment for costs will be taken and if one is rendered, the party so obtaining said divorce will cancel the same immediately upon learning of said judgment.

*"It is further stipulated and agreed that in the event of the death of either party hereto prior to the granting of the divorce to either party* or having the bonds of matrimony dissolved, that *the survivor will not claim as heir* to the property that may be owned by the deceased at the time of death *and will waive all claim as an heir* thereto under the laws of the State of Oregon.

"It is further stipulated and agreed that each party hereto will treat the other with due respect and consideration at any and all times.

"It is further stipulated and agreed that this contract *shall be binding upon the parties hereto and their heirs and that no interest directly or indirectly shall be claimed by either in the property of the other by themselves or any of the heirs or legatees.*

"IN WITNESS WHEREOF, We have hereunto set our hands and seals this 7th day of September, 1923.

"Done in the )"[Sgd.]
Presence Of: )    James A. Craft  (SEAL)
[Sgd.]          )    Party of the First Part.
   A. K. McMahan )  [Sgd.]
[Sgd.]          )    Minnie D. Craft (SEAL)
   Grace Anderson )  Party of the Second Part."
                )         (Italics ours.)

The parties were married in Linn county, Oregon, on April 7, 1895. For several years immediately prior to the execution of said contract, they lived upon and farmed the premises owned by them and particularly described in the agreement. Mrs. Craft not only performed the necessary housework, but also helped in haying, milked cows, and performed other outside farm chores; she worked like a man. There was considerable bickering between them, growing worse as time went on. Eventually, their disagreements led to the making of the contract in question and to their separation.

The provisions of the agreement were fully performed and executed on both sides, except perhaps the last three paragraphs thereof.

Immediately following the execution of this contract, Mrs. Craft left the farm and went to Pasadena, California, where she remained for more than six months. She then returned to Albany, Oregon. Later, she went to the home of her brother-in-law and sister, Mr. and Mrs. William Hassler, near Scio, and there remained for a month or more. While she was at the Hassler farm, Mr. Craft called upon her on three occasions, importuning her to return to him. According to Hassler, Mrs. Craft, after the first visit, told him

and his wife that Mr. Craft wanted her to go back to him, but that she did not intend to do so.

Later, Mrs. Craft moved to Salem and was employed in a cannery. Following that, she lived for a time in Monmouth, where she also was employed. Eventually, and in 1925 or 1926, she took up her residence in Salem, at 425 South 25th street, that being the street address of the property involved here.

On or about the year 1925, Craft purchased some lots in Independence, the title to which was taken in the name of his wife. About the same time, he made a trade for the 25th street property and, subsequently, sold it to Mrs. Craft.

The parties resumed their marital relations about the year 1926, and thereafter, until the death of Mrs. Craft, lived together continuously on this property. From the time the parties resumed living together, and until their respective deaths, this property was the only home either had; it was their actual abode for more than twenty years. It does not have a value in excess of $3,000.

It is the contention of petitioner that the contract of September 7, 1923, was made in contemplation of separation and divorce, and that the agreement was abrogated by the subsequent reconciliation of the parties and their resumption of marital relations. A large number of authorities are cited in support of that contention. On the other hand, respondents contend that the agreement constitutes a valid, equitable, fair settlement of the property rights of Mr. and Mrs. Craft and was not abrogated by the conduct of the parties unless they intended to rescind the same. In support of their position, respondents invite attention to the case of *Garrett v. Kirtley,* 97 W Va 484, 125 SE 347, 40 ALR 1222, and in particular to the exhaustive

note in 40 ALR, commencing at page 1227. It is unnecessary to cite or discuss the several cases mentioned in petitioner's brief, because all of them are considered in the ALR note to which attention has been called.

Although petitioner testified on the trial that, after he resumed marital relations with his wife, it was agreed that the contract would be destroyed, notwithstanding, it was never destroyed, but on the contrary, remained in Mrs. Craft's possession until her death.

A mass of evidence was introduced on the trial in support of the respective theories of the parties. There was a decided conflict in the testimony upon all matters in dispute. The transcript of testimony consisting of 310 pages presents evidence one would expect to find only in a contested divorce suit. Family quarrels are detailed, particularly those occurring during the last several years of Mrs. Craft's life. We read how the parties maintained and used their own separate dishes, furnished and ate their own eggs, bread, and butter, provided and used their own sugar and sugar bowls, etc. We learn that this man nearing 80 years of age and this woman in her late seventies occupied separate bedrooms and beds most of the time. We also are informed that, when they did sleep together, occasionally Mrs. Craft would put two pillows "between the two of them in bed"; notwithstanding that this suggestion of the quaint and delicate custom of bundling was rendered quite unnecessary by the inevitable and natural limitation imposed by the passage of time. Further, we are advised that the husband worked around the house, making needed repairs, kept up the yard, and raised vegetables for household use, while the wife attended her flowers, in addition to keeping house. The evidence shows that, during the latter years of her life, Mrs. Craft complained to a

great extent of her husband, both in her conversations with others and in letters which she wrote; she even suggested that she did not wish him to remain in the home. Though arduous her life may have been, she continued to tolerate her husband until her death. It seems that "her bark was worse than her bite." In fairness to Mr. Craft, however, it should be stated that he testified to a course of conduct toward his wife that was above reproach.

We mention these things, not necessarily because we deem them material, but more for the purpose of indicating the course followed upon the trial. Aside from all this, the significant thing to remember is that this home was the permanent place of abode of both parties.

Owing to the view we take of this case, it is unnecessary for us to pass upon the question of whether or not a property settlement agreement made between a husband and wife in contemplation of separation and divorce is abrogated by the subsequent reconciliation of the parties and their resumption of marital relations.

Section 19-602, OCLA, to enforce the provisions of which this proceeding was instituted, provides in part as follows:

"Upon the filing of the inventory [in the estate] the court or judge thereof *shall make an order* setting apart for the widow, *widower* or minor children of the deceased, if any, *all the property of the estate exempt from execution,* according to exemption laws in effect as of date of death of deceased. The property thus set apart is the property of such widow or widower to be used or expended by him or her in the maintenance of herself and minor children, if any * * *." (Italics ours.)

At the time of the death of decedent, § 6-1301, OCLA, reading in part as follows, was in effect:

"A homestead shall be exempt from sale on execution from the lien of every judgment and from liability in any form for the debts of the owner to the amount in value of three thousand dollars ($3,000), except as otherwise provided by law. The homestead must be the actual abode of and occupied by the owner, his or her spouse * * *."

Section 6-1305, OCLA, provides:

"When the owner of any homestead shall die, not having lawfully devised the same, such homestead shall descend free of all judgments and claims against such deceased owner or his homestead estate, except mortgages lawfully executed * * *; provided, however, that such exemption shall not extend to any person other than a child, grandchild, widow or widower * * *; and provided further, that *nothing herein contained shall be construed as preventing or limiting the court or judge from setting apart for the widow, widower or minor children of the deceased the homestead as provided in section 19-602.*" (Italics ours.)

Section 6-1306, OCLA, provides:

"When any homestead shall have been disposed of by the last will and testament of the owner thereof, the devisee shall take the same free of all judgments and claims against the testator of his homestead estate, except mortgages * * *; provided, however, that such exemption shall not extend to any devisee other than a child, grandchild, widow or widower * * *; and provided further, that *nothing herein contained shall be construed as preventing or limiting the court or judge from setting apart for the widow, widower or minor children of the deceased the homestead as provided in section 19-602.*" (Italics ours.)

■ The homestead created by § 19-602, OCLA, is frequently referred to as a probate homestead. It is purely statutory. Its purpose is to make provision for the support and maintenance of the family, these demands of the family being deemed superior to those of heirs or creditors. It should be liberally construed to attain its objectives.

■ Unless the surviving widower was barred of his right to claim a homestead on account of the contract hereinabove mentioned, then under the plain, mandatory provisions of § 19-602, OCLA, it was the duty of the court, upon the filing of the inventory, to make the order setting aside to him the homestead. The court had no discretion in the matter. The widower's right to have the homestead set apart to him vested when he filed his petition therefor. *Moody v. Baker,* 142 Or 559, 562, 20 P2d 1069; 13 RCL, Homestead, 688, § 148.

■ Where a family is in possession of real property that may be selected as a homestead, the title to which is in the wife and she dies intestate, the property descends to her heirs, subject, however, to the right of the widower to have such homestead set apart to him as a probate homestead. *Iltz v. Krieger,* 104 Or 59, 65, 202 P 409, 206 P 550.

■ Also where, as in this case, a testatrix attempts to dispose of the homestead property by will to a person other than her widower, the devise is wholly ineffective against the surviving widower, unless he elects to take under the will. He may claim his probate homestead. *In re Dunlap's Estate,* 161 Or 93, 98, 87 P2d 225.

The question of election is not present in this case, but if it were, the petitioner made his election when he filed his petition to have the homestead set apart to him.

■ The surviving widower is vested with a fee simple title in the property set aside to him as a homestead. *Iltz v. Krieger,* supra; *Wycoff v. Snapp,* 72 Or 234, 237, 143 P 902.

■ ■ The rules applicable to the construction of written contracts in general are to be applied in construing a postnuptial agreement. Such a contract must be considered as a whole, and from such examination the intent of the parties must be gathered. Such construction should be given the agreement, if possible, as will render all its clauses harmonious, so as to carry into effect the actual purpose and intent of the parties as derived therefrom.

It is manifest from a mere reading of the contract here in question that it was made in contemplation of separation and divorce. In the very first paragraph the parties speak of their disagreements and their inability to live pleasantly together. On the second page of the agreement they speak of divorce and make provisions respecting the incidents of such a proceeding. They follow this with the agreement "that in the event of the death of either party hereto prior to the granting of *the* divorce to either party or having the bonds of matrimony dissolved, that the survivor will not claim as *heir* to the property that may be owned by the deceased at the time of death and will waive all claim *as an heir* under the laws of the State of Oregon." (Italics ours.) The parties separated immediately after this contract was executed and lived separate and apart for a considerable period of time thereafter.

The parties had no children of their own, and, under the laws of this state, if either died intestate before divorce, the other would inherit the entire estate of decedent. § 16-101, OCLA, as amended by ch. 415, Oregon Laws 1947. The above provision of the agree-

ment was designed to meet such a contingency. By virtue thereof, neither party could claim as heir of the other. But in this proceeding the petitioner is not claiming as an heir. He claims a right expressly conferred upon him by statute, a right wholly disassociated from any question of inheritance. It is paramount to any right that an heir might assert in and to property of a decedent. It in no way depends upon the laws of descent and distribution for its existence.

The contract between these parties will admit of no interpretation other than that they intended never again to live and cohabit together as husband and wife. It is manifest that, when the agreement was made, both parties had in mind the property described therein, and that property only. The provisions in regard to it were fully executed. Neither party anticipated that they would again live together and acquire other properties. But even assuming that they intended the provisions respecting claims as an heir should apply not only to the property each received under the agreement, but also to all subsequently-acquired property, it is obvious that they did not have in mind a homestead right such as is asserted here.

It would be unreasonable to assume that either party had in mind that, within two years after this contract was made, they would resume marital relations, and that for more than twenty years continuously thereafter, and until death separated them, they would, as husband and wife, occupy the same home as their permanent place of abode. At the time the agreement was entered into, neither party had the faintest idea that, as concerned them or any of their property, a question of probate homestead would ever arise.

Respondents content that petitioner is barred of his right to a homestead by reason of the broad language

used in the last paragraph of the contract, viz.: "this contract shall be binding upon the parties hereto and their heirs and that *no interest directly or indirectly shall be claimed by either in the property of the other by themselves* or any of the heirs or legatees." (Italics ours.)

We cannot agree with respondents. If the words "no interest directly or indirectly shall be claimed by either in the property of the other" stood alone as descriptive of the rights being waived, there might possibly be some merit in the contention. But these general words must be read and considered in connection with the prior provision of the agreement which is specific and where reference is made to "an heir." A fair interpretation of these words as used is that they refer to a claim, direct or indirect, as an heir.

■■ The right of James A. Craft to the homestead accrued when he filed his petition to have it set apart to him. The trial court erred in dismissing his petition and in failing to make the order required by statute. Craft's death subsequent to decree does not terminate the right. The cause survives and may be prosecuted to final determination by the personal representative of deceased. *In re Potter's Estate,* 154 Or 167, 59 P2d 253.

The decree is reversed and this cause remanded with directions to enter a decree setting apart to petitioner in fee simple the homestead property described in the petition and further decreeing that title thereto vested in petitioner on the date said petition was filed.

No party to recover costs.