CECELIA REILLY

*v.*

MARY J. REILLY *et al.*

*Filed at Ottawa October 31, 1891.*

CHANCERY PRACTICE—*right of complainant to dismiss his bill.* The rule is well settled in this State, that where no cross-bill has been filed the complainant has the right, at any time before final decree is entered, to dismiss his bill on payment of the costs. After final decree he can not dismiss without the consent of the other parties.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Messrs. GOGGIN & WINSLOW, for the appellant:

The right of a complainant to dismiss his bill at any time before a decree, is settled in this State. *Mohler* v. *Wiltberger,* 74 Ill. 163 ; *Purdy* v. *Henslee,* 97 id. 389 ; *Blair* v. *Reading,* 99 id. 600 ; *Gage* v. *Bailey,* 119 id. 539.

Messrs. ADAMS & HAMILTON, for the appellee Mary J. Reilly :

As to the right of the complainant to dismiss her bill, see *Bank* v. *Rose,* 1 Rich. 292 ; *Booth* v. *Leycester,* 1 Keene, 244 ; *Bethia* v. *McKay,* 1 Cheeves, 93.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

James Reilly died in 1875, intestate, leaving a widow, Mary J. Reilly, and four children, Ellen A. Reilly, Frank J. Reilly, Joseph Reilly, and complainant, Cecelia Reilly, (a daughter by a former wife,) as his only heirs. James Reilly died seized of the property described in the bill. In 1877, Ellen A. Reilly, aged four years, died. In 1881, Frank J. Reilly, aged twelve years, died. Cecelia Reilly filed this bill on October 8, 1885, against Mary J. Reilly and Joseph M. Reilly, in which she prayed for a partition of the property of which her father, James Reilly, died seized, and prayed that commissioners be appointed to assign dower to the defendant Mary J. Reilly. Answers were put in to the bill and replications filed to the answers, and the cause was referred to the master in chancery to take the evidence. On the 17th day of March, 1888, the master in chancery filed a report, in which he found that James Reilly died on July 15, 1875, intestate, leaving goods and chattels to the amount of $68.30, and real estate as described in the bill; that said deceased was married twice, his first wife having died, and he married defendant, Mary J. Reilly, now his widow; that complainant, Cecelia Reilly, was the only child born of the first marriage, and only three children born of the second marriage survived the father; that said James Reilly left his widow and four children surviving

him, two of whom have since died in infancy, intestate, leaving their mother, their sister, Cecelia, and their brother, Joseph, their only heirs; that this complainant is entitled to three-eighths of the estate, subject to the widow's dower; that defendant Joseph M. Reilly is entitled to three-eighths, subject to dower, and defendant Mary J. Reilly to two-eighths parts thereof; that James Reilly, with his family, was occupying, at the time of his death, lots 37 and 38 as a homestead, and his widow, with her children, continued thereon after his death for the space of one year, when she moved to other premises, in order to make a living as a dress-maker, with the intention of returning whenever the neighborhood became better settled; that over nine years have elapsed, and she has not returned; that she has voluntarily abandoned the premises, and her estate of homestead is extinguished. The master further found that Mrs. Reilly's account as administratrix left an apparent balance in her hands, unaccounted for, of $1820.63, and not having pursued her remedy for the recovery of her widow's award within a specified time, she had waived her lien on the real estate for the collection of such award.

After the master's report was filed, no steps seem to have been taken in the case until the 2d day of April, 1890, when exceptions were filed by Mrs. Reilly to that portion of the report which found that her estate of homestead in the property had been lost by abandonment, and also to that portion of the report which found that she had lost her lien on the lots for the enforcement of the widow's award.

On the 29th day of April, 1890, while the cause was pending on the exceptions to the master's report, complainant, by her counsel, entered a motion to dismiss her bill, which motion the court overruled. Afterwards, on the 12th day of June, 1890, the cause came on for a hearing on the pleadings, the master's report, and the exceptions thereto. The exceptions were sustained, and the court decreed that Mary J. Reilly be endowed of an equal one-third of all the premises, and to a

homestead in lots 37 and 38, and that her balance of award is a lien on said lands; that she is further entitled to one-fourth part thereof; that Cecelia and Joseph Reilly are entitled each to a three-eighths part thereof, subject to the rights of Mary J. Reilly, as above. Commissioners were appointed to make partition, etc. The commissioners examined the premises and reported that they were not susceptible of division, and the court rendered a decree of sale.

Several errors are complained of, but in the view we take of the case it will only be necessary to consider the decision of the court in overruling the complainant's motion to dismiss her own bill, as the decision of that question will be conclusive of the case.

In 2 Daniell on Chancery Practice, in the discussion of this question, the author lays down the rule as follows: "A plaintiff may move to dismiss his own bill, with costs, as a matter of course, at any time before the decree. It is said that after witnesses have been examined it is not to be prayed except it be upon special cause; but this does not appear to be the present rule of practice. After a decree, however, the court will not suffer a plaintiff to dismiss his own bill unless upon consent, for all parties are interested in a decree, and any party may take such steps as he may be advised, to have the effect of it."

In *Mohler* v. *Wiltberger*, 74 Ill. 163, the same question arose, and following the rule established by Daniell, we said: "We understand the practice to be well settled that the complainant, at any time prior to a decree, has the right, unless a cross-bill has been filed, to control the fortunes of his own bill, and dismiss it as a matter of course."

In *Purdy* v. *Henslee*, 97 Ill. 389, on the hearing, the chancellor duly announced his conclusions, which were adverse to the complainant, and thereupon, before any formal decree was entered, complainant asked to dismiss his bill, which was granted, and the bill was dismissed against defendant's pro-

test, but it was held, there being no cross-bill filed, the court made a proper disposition of the case. It is there said: "By the English chancery practice the complainant retains the absolute control of the suit, and may dismiss it, if he chooses, at any time before decree actually rendered,"—citing authorities. The English practice is in force here, except so far as it has been changed by our statute.

The question again arose in *Blair* v. *Reading,* 99 Ill. 600, and the court again held that a complainant has the right, at any time before hearing, to dismiss his bill at his own costs, either as to all or a part of the defendants, in the absence of a statutory regulation. In the later case of *Gage* v. *Bailey,* 119 Ill. 539, it was again declared that the general rule was that a complainant may dismiss his bill at any time he may desire, before a final decree has been entered in the cause.

It would therefore seem that, in this State at least, the rule is well settled that where no cross-bill has been filed the complainant has the right, at any time before final decree, to dismiss his bill on payment of costs. The rule that we have adopted is sustained by the courts of other States. *Simpson* v. *Brewster,* 9 Paige, 245; *Cummins* v. *Bennett,* 8 id. 79; *Smith* v. *Smith,* 2 Blackf. 253; *Cook* v. *Walker,* 24 Ga. 331; *Mason* v. *Railroad Co.* 52 Me. 82. There are some cases holding that the chancellor has a discretion, and may, in certain cases likely to work a hardship to a defendant, refuse to allow a complainant to dismiss his bill; but these cases are not, in our opinion, in harmony with the current of authority, and we are not inclined to change the rule we have established, and follow these cases.

We think the court erred in refusing to allow complainant to dismiss her bill, and for this error the decree will be reversed and the cause remanded, with directions to allow the bill to be dismissed.

                                        *Decree reversed.*

BAILEY, J.: I do not concur in the foregoing decision.