Argued January 31; reversed February 15; rehearing
denied March 14, 1939

IN RE DUNLAP'S ESTATE

DUNLAP ET AL. *v.* WOODRUFF ET AL.

(87 P. (2d) 225)

In Banc.

*Frank Holmes,* of McMinnville (J. S. Cook, of Burns, on the brief), for appellant.

*Clarence B. Phillips* and *Robert M. Duncan,* both of Burns, for respondents.

KELLY, J. On or about April 18, 1932, W. H. Dunlap died testate in Harney county, Oregon. At the time of his death, he was a resident of said Harney county and left an estate consisting of real and personal property. By the terms of his will his wife and four daughters were bequeathed one dollar each, and all the rest, residue and remainder of his estate was devised and bequeathed to A. D. Woodruff. Said Woodruff was also appointed executor of said will to serve without bond or bonds.

From 1910 to 1919, Dunlap and his wife, the petitioner herein, resided at Drewsey, Oregon, on the 160 acres in suit, the same being the northwest quarter of section 27, township 20, south range 35 east of Willamette Meridian in Harney county, Oregon.

In 1919, Mr. and Mrs. Dunlap sold this land and the livestock on it to one Miller for $15,000 for which $7,500 was paid in cash and a mortgage on said property was given for the remaining $7,500.

Miller defaulted in his mortgage and Mr. Dunlap foreclosed thereby receiving title in April, 1931. Dunlap regained actual possession about April 1, 1931.

In September, 1931, Dunlap, needing medical attention, went to Burns, Oregon. While conversing with a physician, he inquired as to the whereabouts of Woodruff, whereupon the doctor directed him to Woodruff, who was at work with a team across the street from where the doctor and Dunlap were talking.

Woodruff testified that Dunlap agreed to give him the premises in suit, if he, Woodruff, and his wife would care for him while he lived. Dunlap then came to the home of Mr. and Mrs. Woodruff, Alva Woodruff, a son of A. D. Woodruff, and his wife went to the premises in suit and remained there while Dunlap lived. On several occasions Dunlap returned to said premises remaining a day or two at a time.

Sometime prior to March 21, 1932, Dunlap executed a holographic will, giving to ''Mabel Dunlap and her four daughters one Dollar each'' and the rest of his property to A. D. Woodruff, appointing him executor without bond ''and giving him seisin thereof for my care and keep as long as I live.'' The following notation appears on said will: ''N W 1/4 Se 27 T P 20 S.''

On March 21, 1932, Judge Ellis prepared the will which has been admitted to probate herein. This will contains the same provisions as those of the holographic will above mentioned.

In 1921, Mr. and Mrs. Dunlap took up their residence in Lincoln county. In June, 1922, Dunlap, be-

ing dissatisfied with life on the coast, left his wife and daughters and remained away about seven months. In 1923, he again left home and three months afterward, wrote to his wife from Arkansas. He never again returned to his family, but remained away from the state of Oregon until September, 1930.

A contest of the will herein was filed by petitioner and her four daughters. As to the petitioner, this contest has been dismissed.

In 1919, the legislature enacted chapter 112, Session Laws 1919, sections 5 and 6 of which became respectively sections 225 and 226 Oregon Laws 1920. In construing that legislation this court held that its effect was to take the family homestead out from the general class of property dealt with by section 1234 ibid, and deal with it specially: *Overland et al. v. Jackson et al.*, 128 Or. 455, 275 P. 21. Said section 1234 amended in 1923 and 1927, is now section 11-402, Oregon Code 1930.

In 1927, said sections 225 and 226, Oregon Laws 1920, were amended. By that amendment, to each of those sections the following clause was added: "And provided further, that nothing herein contained shall be construed as preventing or limiting the court or judge from setting apart for the widow, widower or minor children of the deceased, the homestead as provided in section 11-402, Oregon Code.": Sections 3-205 and 3-206, Oregon Code 1930. In speaking of the effect of these amendments of said sections 225 and 226, Oregon Laws 1923, made in 1927, this court through Mr. Justice BELT has said:

"Clearly the effect of these amendments made in 1927 is to reinstate the rule as announced in *Wycoff v. Snapp*, supra, in which it was held that under the

provisions of section 1234, L. O. L., now section 11-402, Oregon Code 1930, the surviving spouse acquires a fee simple estate.'': *Banfield v. Small*, 139 Or. 135, 8 P. (2d) 779. In *Banfield v. Small*, supra, the court was considering whether the surviving spouse acquired a fee simple estate or a lesser estate.

In the case at bar, we are considering the question whether the court may set aside a homestead to the surviving widow as provided in section 1234, L. O. L. (now section 11-402, Oregon Code 1930). In *Wycoff v. Snapp*, 72 Or. 234, 143 P. 902, from which the quotation in *Banfield v. Small*, supra, is taken this court also held that—

"The property being thus exempt from execution, it was competent for the county court to set it apart to the widow for the support of herself and the minor children, as provided in Section 1234, L. O. L."

In accordance with the holding in *Banfield v. Small*, supra, homesteads now are to be treated in that respect as other exempt property specified in section 11-402, Oregon Code 1930.

Section 3-206, Oregon Code 1930, is as follows:

"Devise of homesteads—Freedom from liens— When any homestead shall have been disposed of by the last will and testament of the owner thereof, the devisee shall take the same free of all judgments and claims against the testator of his homestead estate, except mortgages lawfully executed thereon and laborers' and mechanics' liens; provided, however, that such exemption shall not extend to any devisee other than a child, grandchild, widow or widower, and father or mother of the testator; provided further, such homestead shall be subject to and charged with the expenses of his last sickness and of his funeral and the costs and charges of probate; and provided further, that nothing herein contained shall be construed as preventing

or limiting the court or judge from setting apart for the widow, widower or minor children of the deceased the homestead as provided in section 11-402, Oregon Code.''

While the first sentence recognizes the right of the owner of a homestead to dispose of it by a last will and testament, the concluding proviso therein declares that nothing contained in that section of the code shall prevent or limit the court or judge from setting apart a homestead for the widow, etc.

■ To give effect to both of these provisions, we are constrained to hold that as to a widow, widower or surviving minor children of the deceased testator, such testator's disposal by will and testament of a homestead to any other person may become effective only when they, that is, the widow, widower or minor children, elect to take under such will and testament.

When such election is made, it is by virtue thereof and not by reason of the statute that the court is prevented from setting apart such homestead.

The doctrine that an attempted devise to a third person of a homestead is not effective unless the surviving spouse elects to take under the terms of the will containing such devise, is recognized in other jurisdictions.

In an early case in Vermont, the supreme court of that state said:

''The intent of the homestead act is to create a home for the poor debtor and his family which shall not be liable for his debts, and which upon the death of the husband shall descend to the widow and minor children.''

''The spirit of the act and all its provisions indicate, that it was intended that the husband should not have the power by will to devise it away from his wife and minor children.

"He cannot alienate or mortgage it without the consent of the wife. G. S. c. 68 § 10. If he die, leaving a wife and children it shall vest in them free from his debts. It is not to be divided among his other heirs or go to pay his creditors. But the home is preserved for the family.

"If the widow have dower, the value of her interest in the homestead is to be deducted from the dower. As the husband by will cannot defeat dower we may well consider that he should not be allowed to defeat the homestead right which so much resembles dower. If a home is to be made for the family why should they be deprived of it at the very time when they may need it most—when the head of the family is taken away? If it is not to be kept for the humane purpose of providing for the widow and minor children, why should it not be appropriated to the purpose of paying honest creditors as well as leave it to the caprice of the husband to dispose of by will? Why should the husband be restrained from deeding or mortgaging it during his life and be permitted to will it away when he dies?

"Upon the decease of Judge Meech we have no doubt Mrs. Meech was at liberty to renounce the provisions of the will and elect to have her homestead and her dower." *Meech v. Estate of Meech*, 37 Vt. 414, 418, 419.

The Missouri supreme court following the doctrine of *Meech v. Meech*, supra, has said:

"It was held in Schorr v. Etling, 124 Mo. 42, as the homestead law of 1865 (sec. 5 p. 698, Wagner's Statutes, 1872) did not exempt the rights of the widow from the operation of the will of the husband, she can be excluded from her homestead by devises made by him, provided she accepts the provisions made for her in lieu thereof. And that the doctrine of election should be applied in determining whether she shall have her homestead by right under the statute or the benefit of the will. (Burgess v. Bowles, 99 Mo. 550; Davidson v. Davis, 86 Mo. 442; Meech v. Estate of Meech, 37 Vt. 419)."

\* \* \* \* \*

"The homestead, as dower, is vested in the widow, by operation of law and without the act or will of the husband, and in spite of them. It follows that, unless the intention to exclude these rights is manifest from the provisions of the will, they will not be excluded; she can claim both the benefits given her by the law and the will. The intent of the testator to dispose of that which is not his shall appear upon the will. (Stratton v. Best, 1 Ves Jr 285; Gibson v. Gibson, 1 Drew 42; Streatfield v. Streatfield, 1 White & Tudor's Leading Cases in Equity, 524, and cases cited.)

"The principle of election rests upon the equitable ground that no man can be permitted to claim inconsistent rights with regard to the same subject. (Leading cases, supra, note.)

"In order, therefore, to deprive the widow of her homestead right, she must have accepted under the will of her deceased husband, etc." *Ball v. Ball,* 165 Mo. 312, 327, 65 S. W. 552.

The earlier cases are cited and reviewed in Vol. 22, A. L. R. at p. 513.

In a comparatively recent case, the supreme court of Tennessee, speaking through Mr. Justice Chambliss, has said:

"The annotation in 22 A. L. R. 513, supra, after digesting Chamness v. Parrish, supra " (118 Tenn. 739, 103 S. W. 822, 824) "says it appears therefore, that the rule in Tennessee is now the same as that in other jurisdictions."

"It will be observed in the above quoted excerpt from the opinion in Chamness v. Parrish, the court states three rules of law which, we think, control the decision of the instant case. They are as follows:

"(1) The husband cannot, by his will, deprive his widow of the homestead right; (2) the widow will not be put to her election by provisions of the husband's will in her favor, unless it plainly appears from the will that such was his intention; and (3) such inten-

tion will not be implied from a mere gift to the wife by the will.

"The second of the three propositions just stated concedes that there may be circumstances under which the widow will be put to her election with respect to the homestead; hence, the first proposition must mean that, if the widow elects to take homestead, she cannot be deprived of that right by her husband's will. But, under the second rule, if it plainly appears from the will that the testator intended that his widow should not have homestead assigned to her out of his estate, she must elect whether she will take homestead or the provision made for her in the will. And (by the third rule), in ascertaining the intention of the testator, the mere fact that the will contains a bequest or devise to the widow is not, of itself, sufficient to show that the testator intended that she should not have homestead out of his estate." *Miller v. Fidelity Bankers' Trust Co.*, 164 Tenn. 149, 46 S. W. (2d) 516.

We quote the foregoing authorities upon the question of the effect of a testamentary devise to a third party of a homestead only in support of our construction of section 3-206, Oregon Code 1930, that such a devise is effective only in case the widow, widower or minor children elect to take under the terms of the will containing it.

While the rules above quoted from *Chamness v. Parrish,* supra, have been followed by this court in *Ferguson et al. v. Holborn,* 106 Or. 566, 211 P. 953, except as to the first, namely: "The husband cannot by his will deprive his widow of the homestead right," these rules have no application to the facts of the instant case.

The rule which we apply here is recognized by Mr. Tiffany. Besides citing authorities supporting it, he cites a case from Wisconsin and another from Missis-

sippi to the contrary: Vol. 1, Tiffany, Real Property, p. 858.

The Wisconsin case so cited is controlled by section 1, chapter 270, Laws (Wis.) 1864, which says:

"Any homestead which shall have been heretofore disposed of by the last will and testament of the owner thereof, or which shall hereafter be disposed of by the last will and testament of the owner thereof, shall descend to the legatee or legatees in said will named." *Turner v. Oberheu*, et al., 89 Wis. 1, 61 N. W. 280, officially entitled *Turner v. Scheiber.*

The Mississippi case, so cited, by Mr. Tiffany, is based upon the following statutory provision:

"In case the wife should have a separate property, at the time of the death of her husband, equal in value to what would be her lawful portion of her husband's real and personal estate, and he should have made a will, she shall not be at liberty to signify her dissent to such will, or to renounce any provision or bequest therein, in her favor, and elect to take her portion of his estate." Section 1175, Revised Code of Mississippi, 1880, pp. 340, 341.

In that case, the Mississippi court say:

"Section 1175 of the code applied and governed the rights of the widow in this case and as she had a separate estate equal in value to what would have been her lawful portion of her husband's real and personal estate, it was properly held that she had no interest in the homestead he had devised." *Osburn v. Sims*, 62 Miss. 429, 433.

In the case at bar, the petitioner did not elect to take under the will. The only question, therefore, which this record presents is whether the premises in suit were the actual abode of Mr. Dunlap when he died. To state the same question differently, it is whether

the record shows that Mr. Dunlap abandoned his homestead right in said property.

 Neither of the wills herein sheds any light upon that question. At most, their effect was to postpone the remuneration to Woodruff for his care of Dunlap to the time of Dunlap's death. The contract to make a will had the same effect. It implied no surrender or waiver on Dunlap's part to the right to claim that the premises in suit were exempt under the terms of the homestead law. There remains, then, the fact that Dunlap was away from his premises because he was ill and in no physical condition to live alone. He was under the constant treatment of a physician while he was thus away from said premises. It is true that he referred to the Woodruff residence as ''home''. That is not unusual where the place so designated is merely a temporary abiding place. Many officials, many students so refer to the places where their temporary duties require them to be; but in point of fact their homes may be at remote distances therefrom. We think that a return to health on Dunlap's part would have been attended by a return to his ranch at Drewsey. In other words, absence, because of sickness cannot rightly be deemed abandonment of a homestead right.

''It is well established that a temporary absence or removal will not constitute an abandonment of a homestead if there is a constant and abiding intention to return and occupy the same as a home: McDermott v. Kernan, 72 Wis. 268 (39 N. W. 537, 7 Am. St. Rep. 864); Boot v. Brewster, 75 Iowa, 631 (36 N. W. 649, 9 Am. St. Rep. 515); Kansas & T. Coal Co. v. Judd, 6 Kan. App. 487 (50 Pac. 943); Reilly v. Reilly, 139 Ill. 180 (28 N. E. 960); Id., (26 N. E. 604, Rigdon v. Bogan, 160 La. 551 (107 South 403); 13 R. C. L. 648; 29 C. J. 941; Thompson on Real Property, Sec. 935. The dura-

tion of the absence is a matter for consideration but is not conclusive. Abandonment is a matter of intention and is to be determined in the light of all the facts and circumstances." *DeHaven & Son Hardware Co. v. Schultz*, 122 Or. 493, 497, 259 P. 778.

The statute provides that the homestead exemption shall not be impaired by temporary removal or absence with intention to reoccupy the same. Section 3-201, Oregon Code 1930.

■ Mr. Woodruff testified that to bind the contract for maintenance, he bought Mr. Dunlap a new bed. This indicates that the bed customarily used by Mr. Dunlap remained on the premises at Drewsey. The inventory and appraisement mentions but one bedstead and set of springs appraised at $3.50. In addition to these items of household goods, there are also listed in the inventory one cook stove range and one heating stove. From the fact that Mr. Woodruff testified that his house was a small one of but three rooms and his son lived upon the premises in suit as a caretaker, it seems clear that the bed and stoves belonging to Mr. Dunlap remained at the Drewsey ranch until he died. The testimony shows that his team of horses also remained upon the ranch. This, we think, tends to show that Mr. Dunlap intended to return there as soon as his health would permit. There is testimony tending to show that in 1926, Mrs. Dunlap claimed homestead exemption upon some real property in Lincoln county. A claim of exemption as to one piece of property does not bar or prevent a claim of homestead as to another parcel five years later where as in the case at bar the circumstances relating to possession and ownership have materially changed and no rights have intervened in reliance upon the former claim of exemption.

For these reasons the decree of the circuit court is reversed and the cause remanded with instructions to enter an order in accordance with the prayer of the petition setting aside the premises in suit to the petitioner as a homestead and for such further proceedings as may be proper.