Argued March 18, reversed with directions April 29, 1953

# BENEDICT *v.* LEE, Administrator

256 P. 2d 507

*Louis E. Starr*, of Portland, argued the cause and filed a brief for appellant.

*George P. Winslow*, of Tillamook, argued the cause and filed a brief for respondent.

Before LATOURETTE, Chief Justice, and LUSK, TOOZE and PERRY, Justices.

TOOZE, J.

Clarence G. Benedict, as the widower of Cecilia F. Benedict, deceased, filed in the probate department of the county court for Tillamook county, Oregon, his petition to have set apart to him as his homestead certain real property located in Tillamook county, which was owned by his wife at the time of her death. The petition was resisted by George W. Lee, as administrator de bonis non, with will annexed, of the estate of Cecilia F. Benedict, deceased. Pursuant to

the provisions of § 13-502, OCLA, the cause was transferred for hearing to the circuit court for Tillamook county, by order of the county court dated May 31, 1951. The trial court entered an order denying the petition, and petitioner appeals.

Cecilia F. Benedict died testate in Tillamook county on December 12, 1950, at the age of 69 years. She left surviving her as her sole heirs at law, devisees, and legatees, the following persons: Clarence G. Benedict, surviving husband, residing at 724 S. E. Grant street, Portland, Oregon; Daniel J. Blackmore, a son, residing at Mohler, Oregon; Dorothy E. Lee, a daughter, residing at Nehalem, Oregon; and Lawrence L. Blackmore, a son, residing at Mohler, Oregon.

At the time of her death Mrs. Benedict was the owner of various assets, including the real property involved in this proceeding. In her last will and testament, which was executed on May 26, 1933, and duly admitted to probate on January 2, 1951, the decedent bequeathed to her widower the sum of $300 only. All of her real property was devised and bequeathed to her children, Daniel J. Blackmore, Lawrence L. Blackmore, and Dorothy E. Lee, share and share alike. On January 26, 1951, Clarence G. Benedict, widower, filed in the probate proceeding his formal renunciation of all provisions of the last will and testament in his favor, and elected to take curtesy in the lands of decedent, pursuant to the provisions of § 17-401, OCLA.

On May 17, 1951, Clarence G. Benedict, as surviving widower, duly filed his petition in the probate court for an order to set apart to him a probate homestead in the real property of which Cecilia F. Benedict died seized in fee simple. In his petition he described the property by metes and bounds and alleged that it had

been appraised as of the value of $13,000. He also alleged that no homestead had been selected, designated, and recorded by either the decedent or himself during the lifetime of decedent. An answer was filed by Dorothy E. Lee, then executrix of the estate, denying the material allegations of the complaint and affirmatively alleging that the petition did not state facts sufficient to authorize the court to grant the prayer of the petition, and that the petitioner had no right, title, or interest in and to the real property described in the petition, or any part thereof.

The real property involved comprises a comparatively small dairy ranch located near Mohler, in Tillamook county. It was owned by decedent at the time of her marriage to Clarence G. Benedict at Vancouver, Washington, on April 18, 1927. At the time of this marriage, decedent and her three children, the issue of a prior marriage were living at Vancouver, the dairy ranch being rented. Petitioner had two sons by a prior marriage.

Shortly after the marriage, petitioner and his wife, with their respective children, moved upon the ranch, continuing to reside thereon and operate it until 1930, when it was leased to one Easom for a term of five years. Thereupon, the family moved to Tigard, in Washington county, Oregon. Petitioner is a carpenter by trade and carried on his occupation in Portland, Astoria, and Tacoma. He knew little about dairying, and his operation of the ranch for the period of two years did not prove successful.

In 1934, Easom surrendered the premises, and decedent and her two boys returned to the ranch. Petitioner remained in Portland, visiting the home place on week-ends. With the help of her sons, particularly

that of Lawrence, decedent continued to operate the dairy ranch until 1941. Lawrence was married in 1941 and established his home about a mile from his mother's property. For a period of approximately two years, he worked for others, his mother employing outside help on the ranch. During the latter part of 1941, and until November, 1942, petitioner lived upon the premises while constructing a barn thereon.

Decedent was dissatisfied with conditions and threatened to sell the property. She not only wished to live with her husband in Portland, but also desired to be near a Catholic church, of which she was a devout member. The nearest church to the Mohler property was that located at Rockaway, approximately ten miles distant, and her son Lawrence rebelled at taking her to church as often as she desired.

In 1943, according to the testimony of Lawrence, an arrangement was entered into between himself and his mother, whereby he took charge of the operations of the ranch. Lawrence and his wife moved upon the premises and remained there continuously until the time of trial of this proceeding. Decedent returned to Portland and thereafter resided with petitioner in a rented apartment at the Grant street address above given. She returned to the farm periodically to the time of her death, and had been there for a period of approximately a month immediately prior to her death. Upon such periodical visits, decedent also visited with her daughter at Nehalem.

While Lawrence was operating the ranch and until 1949, all receipts from the operations of the premises were deposited in the bank to the credit of decedent, and she paid all the bills. With the assistance of Lawrence, she prepared and filed annual income tax re-

turns. In all but one or two of these returns, she set forth as a deduction the sum of $1,000 as payment to Lawrence for his services in conducting the affairs of the ranch. In 1949, decedent suffered a heart attack and thereafter was unable to write. She executed a power of attorney authorizing Lawrence to act in her place and stead.

Upon the trial, the administrator directed most of his evidence to the proposition that petitioner's actual place of abode was in Portland, not on the farm, and to the contention that when decedent left the ranch in 1943, she did not intend to return again and claim it as her home, and that her place of abode at the time of her death was with her husband in Portland.

There is a decided conflict in the testimony respecting these matters, but we do not deem it necessary to determine wherein lies the truth. The trial court based its final order upon a finding that at the time of decedent's death, the dairy farm was not the bona fide home and abode of decedent and petitioner, and, for the purposes of this opinion, we are willing to accept that finding at its face value.

Section 6-1301, OCLA, as amended by ch 9, Oregon Laws 1949, provides:

"A homestead shall be exempt from sale on execution from the lien of every judgment and from liability in any form for the debts of the owner to the amount in value of five thousand dollars ($5,000), except as otherwise provided by law. *The homestead must be the actual abode of and occupied by the owner,* his or her spouse, parent *or child,* and such exemption shall not be impaired by temporary removal or absence with the intention to reoccupy the same as a homestead, nor by the sale thereof, but shall extend to the proceeds derived from such sale to an amount not exceeding five

thousand dollars ($5,000), while held, with the intention to procure another homestead therewith for a period not exceeding one year." (Italics ours.)

■ There is no dispute in the evidence about the property in question being "the actual abode of and occupied by" Lawrence Blackmore, the son of decedent, at the time of her death and for several years continuously immediately prior thereto. The requirements of the homestead statute as to actual abode and occupancy are met not only by permanent residence thereon by the owner, his or her spouse, or parent, but also by the same being the actual abode of and occupied by a child of the owner. It follows, therefore, that under the facts of this case, the real property in question was subject to being claimed or set aside as a homestead.

Section 19-602, OCLA, provides in part as follows:

"Upon the filing of the inventory [in the estate] the court or judge thereof *shall make an order* setting apart for the widow, *widower* or minor children of the deceased, if any, *all the property of the estate exempt from execution,* according to exemption laws in effect as of date of death of deceased. The property thus set apart is the property of such widow or widower to be used or expended by him or her in the maintenance of herself and minor children, if any * * *." (Italics ours.)

Section 6-1306, OCLA, provides:

"When any homestead shall have been disposed of by the last will and testament of the owner thereof, the devisee shall take the same free of all judgments and claims against the testator of his homestead estate, except mortgages * * *; provided, however, that such exemption shall not extend to any devisee other than a child, grandchild, widow or widower * * *; and provided further,

that *nothing herein contained shall be construed
as preventing or limiting the court or judge from
setting apart for the widow, widower or minor
children of the deceased the homestead as provided
in section* 19-602." (Italics ours.)

In speaking for the court in *Jenning v. Jenning,*
197 Or 366, 253 P2d 276, Mr. Justice PERRY said:

"Since the right of homestead is a matter of
paramount policy to the welfare of the state in the
preservation of the home for those coming within
its terms, the people of the state provided: [Quot-
ing a portion of § 19-602, OCLA, supra].

"The words of this statute and the purpose to
be accomplished leave no doubt in our minds that
the duty to set aside the exempt property is manda-
tory. Moody v. Baker, 142 Or 559, 20 P2d 1069.
The mandatory duty upon the court does not arise,
however, until the surviving spouse or minor chil-
dren request that the homestead, with all its ex-
emptions and benefits, be set aside in severalty."

■ The homestead created by § 19-602, OCLA, is
frequently referred to as a probate homestead. Its
purpose is to make provision for the support and
maintenance of the family, these demands of the family
being deemed superior to those of heirs or creditors.
The statute should be liberally construed to attain its
objectives.

In passing, we note from the record that for several
years petitioner has been receiving funds from Mult-
nomah county under the Public Welfare program.
When he receives that to which he is entitled under
the foregoing statutes, he should cease to be dependent
upon public assistance.

■ The right of Clarence G. Benedict to have a home-
stead set apart to him out of the real property above

mentioned accrued when he filed his petition therefor. Under the plain, mandatory provisions of § 19-602, OCLA, supra, it was the duty of the court, upon the filing of the inventory, and after petition therefor, to make the order setting aside to petitioner the homestead. The court had no discretion in the matter. *Brown, Adm'r. v. Miles et al.,* 193 Or 466, 479, 238 P2d 761.

Formal pleadings are not contemplated in a proceeding to have a probate homestead set apart to a surviving spouse. All that is required is a petition setting forth the relationship petitioner bears to decedent, a description of the property of which decedent died seized and possessed, and a request that a homestead be set apart to petitioner out of said property. Such a petition is not tested for sufficiency by the strict rules applying to complaints in actions at law and suits in equity. It will be liberally construed. In his petition in this case, petitioner alleged all the essential facts.

As previously noted, the petitioner described the entire tract of land in his petition and alleged that in the inventory and appraisement filed with the court, it was given a value of $13,000. The fact that the entire tract had a value greatly in excess of the $5,000 maximum value fixed under the homestead exemption statute, will not defeat petitioner's right to have a probate homestead therein set apart to him. In *Moody v. Baker,* 142 Or 559, 561, 20 P2d 1069, it appears that the surviving widower petitioned to have set aside to him a homestead right in an apartment house valued at $17,500, which was owned by his wife at the time of her death. The trial court entered an order setting aside such homestead right. In affirming the order on

appeal, this court, speaking through the late Justice BELT, said:

"It is suggested that, if a homestead exemption of the value of $3,000 be carved out of this property, such could be accomplished only by a sale and that, as a result, defendant would not be afforded a homestead which the statute contemplates. It is observed that under section 3-201, Oregon Code 1930, the homestead right shall not be impaired by the sale of the property, 'but shall extend to the proceeds derived from such sale to an amount not exceeding three thousand dollars ($3,000), while held, with the intention to procure another homestead therewith, for a period not exceeding one year.' "

The right of the surviving spouse to a probate homestead is limited in the amount thereof by the express provisions of the statute. He or she is not entitled to anything more than the law provides. Section 19-602, OCLA, limits the right to "all the property of the estate exempt from execution, according to exemption laws in effect as of date of death of deceased." Insofar as real property is concerned, we must look to the provisions of § 6-1301, OCLA, as amended, supra, to ascertain what is exempt from execution, and that section of the code must be read into and considered a part of § 19-602, OCLA, so far as applicable.

Section 6-1302, OCLA, provides:

"Such homestead shall consist, when not located in any town or city laid off into blocks and lots, of any quantity of land not exceeding one hundred sixty (160) acres; and when located in any such town or city, of any quantity of land not exceeding one block, *provided such homestead shall not exceed in value the sum of three thousand dollars ($3,-000)."* (Italics ours.)

As before noted § 6-1301, OCLA, was amended in 1949, so as to increase the value of the exempt property from $3,000 to $5,000. At the 1949 session of the legislature, amendment of § 6-1302, OCLA, to accord with the amendment of § 6-1301, OCLA, apparently was overlooked. This was taken care of by an amendment to § 6-1302, OCLA, in 1951, when the words and figures "three thousand dollars ($3,000)" were changed to read "$5,000". Ch 160, Oregon Laws 1951.

Section 6-1304, OCLA, as amended by ch 22, Oregon Laws 1949, provides the procedure for making a claim to a homestead and having it set off. This statute states that whenever a levy is made upon a homestead, the owner thereof, his or her spouse, parent or child, agent or attorney, may notify the officer making the levy, at any time before sale, that he claims a homestead in the lands levied upon, giving a description of the quantity of land claimed as a homestead and an estimate of the value thereof, and thereupon, the remainder alone shall be subject to sale under such levy, unless the plaintiff in the execution shall deny the right to such homestead, or be dissatisfied with the quantity or estimate of the value of the land so claimed as a homestead. The statute then provides:

"* * * If such plaintiff in the execution is dissatisfied with the quantity claimed or the estimate of the value thereof, then he may direct the officer making the levy to select three disinterested freeholders of the county who shall examine and appraise, under oath, the lands and improvements, and if the appraised value thereof exceeds the sum of five thousand dollars ($5,000), *said freeholders may cause to be surveyed and shall set off in compact form, including the dwelling house and appurtenances, so much of the land claimed as a homestead to the amount in value of five thousand*

*dollars ($5,000),* and the remainder alone shall be subject to sale under such levy. After the lands are surveyed and set off, if, in the opinion of the plaintiff in the execution, the same shall be of greater value than the sum of five thousand dollars ($5,000), the officer may proceed to advertise and sell the said premises so set off, and out of the proceeds of such sale to pay the homestead claimant the sum of five thousand dollars ($5,000), and apply the balance of the proceeds of such sale on the execution; provided, however, that no sale shall be made in the case last mentioned unless a greater sum than five thousand dollars ($5,000) shall be bid for said premises. *When the freeholders shall be of the opinion that the property claimed as a homestead is worth more than five thousand dollars ($5,000) and that because of its shape and quantity it can not be set off without destroying the intrinsic value or use thereof, then said freeholders shall so certify to the officer making the levy and he shall proceed to advertise and sell the same, as in the case last mentioned.''* (Italics ours.)

As we have observed, § 19-602, OCLA, casts upon the probate court the mandatory duty of ''setting apart'' to the surviving spouse the probate homestead. To ''set apart'' means to separate to a particular use; to separate from the rest. Therefore, upon the petition of the surviving spouse, it is the duty of the probate court, and it has full authority ''to set apart'' out of the whole of the real property, if the whole be of greater value than $5,000, such portion thereof, including the dwelling house, as will not exceed the value of $5,000. Inasmuch as the probate homestead law refers to and bases the extent of the right of the surviving spouse upon the general exemption statutes, it follows that the provisions of those statutes for the establishment of the right must be deemed to apply in the pro-

bate court insofar as applicable, in enforcing the right to the probate homestead.

In 40 CJS 782, Homesteads, § 279a, it is stated:

"The applicable statutes of the particular jurisdiction generally control the proceedings for the selection, setting apart, or protection of a survivor's homestead rights. However, since the homestead exemption of the surviving spouse or children is essentially the same as that of the decedent debtor, it has been held that the homestead may be selected and set apart to such survivor or survivors precisely as it would have been on application of the debtor."

Therefore, in the case at bar, when it appeared that the value of the entire tract of land was greatly in excess of the value of the homestead right as fixed by statute, it was the duty of the probate court to have the land appraised by three disinterested freeholders, and then set apart to petitioner such portion thereof, including the dwelling house, as would come within the $5,000 maximum value allowed by statute as a homestead exemption. If the property is of such shape and quantity, or other conditions exist, that it cannot be set off without destroying the intrinsic value or use thereof, or cannot be separated, then such part as is necessary to accomplish the purpose may be ordered sold, and out of the proceeds of such sale, the petitioner shall be paid the sum of $5,000, in lieu of his right and title in and to the land itself.

The proceedings hereinabove directed find further warrant in § 13-715, OCLA, which provides:

"When jurisdiction is, by the organic law of this state, or by this Code or any other statute, conferred on a court or judicial officer, all the means to carry it into effect are also given; and in the

exercise of the jurisdiction, if the course of proceeding be not specifically pointed out by this Code, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code.''

The order of the trial court is reversed and this cause remanded with directions to allow the petition of petitioner, and for such further proceedings as may be necessary, not inconsistent with this opinion.

Appellant is entitled to costs.