Submitted December 31, 1956, affirmed February 21, mandate
recalled and amended March 20, 1957

IN THE MATTER OF THE ESTATE OF LULA M. MOORE,
DECEASED

# MOORE v. SCHERMERHORN

307 P. 2d 483
308 P. 2d 180

Edwin J. Welsh, Portland, for appellant.
Eben & Nahstoll, Portland, for respondent.

KESTER, J.

This is an appeal by Fred L. Moore, surviving husband of Lula Schermerhorn Moore, deceased, from an order of the probate court denying his claim that there be set aside for him under ORS 116.010* certain real and personal property of her estate which was exempt from execution. The basis for denying the claim was a prenuptial agreement executed by the parties the day before their marriage. The issues presented involve the interpretation and validity of the prenuptial agreement.

Fred L. Moore and Lula Schermerhorn had each been married prior to their marriage to each other. He had sons by his former marriage; and she and her former husband had an adopted son, Arthur Schermerhorn, the respondent here. Each of them had accumulated some property separately prior to their marriage, and after their marriage each continued to be gainfully employed. Prior to their marriage each consulted an attorney concerning their respective property rights, and the agreement in question was prepared by counsel. The agreement was executed on December 11, 1952, and they were married on December 12, 1952. She died on March 18, 1955, leaving Fred L. Moore as her widower, and her adopted son, Arthur Schermerhorn, as her only heir.

---

* ORS 116.010. "Upon the filing of the inventory the court or judge thereof shall make an order setting apart for the widow, widower or minor children of the deceased, if any, all the property of the estate exempt from execution, according to exemption laws in effect as of date of death of deceased. The property thus set apart is the property of such widow or widower to be used or expended by her or him in the maintenance of herself or himself and minor children, if any. If there is no widow or widower, it is the property of the minor child; or if more than one child, then of the minor children in equal shares, to be used or expended in the nurture and education of such child or children by the guardian thereof, as the law directs."

She did not leave a will, and petitioner, Fred L. Moore, was appointed administrator of her estate. After the filing of the inventory, he filed a petition for an order setting aside to him as a probate homestead an interest in certain real property to the value of $5,000 (ORS 23.240) and a separate petition for an order setting aside to him certain personal property described in the language of the exemption statute and to the values therein provided (ORS 23.160).

Respondent Arthur Schermerhorn filed answers to the petitions, alleging the prenuptial agreement and also waiver of and estoppel to assert the claims. After a hearing the trial court entered findings of fact and conclusions of law favorable to respondent and a decree and order dismissing the petitions, from which this appeal was taken.

The real property in question was owned by Lula Schermerhorn and was her residence prior to her marriage with Fred L. Moore, and after the marriage it was their family home. No interest in it was ever conveyed to Mr. Moore, and it is now the principal asset of her estate. There is no dispute that it would qualify as a probate homestead, were it not for the prenuptial agreement. With respect to the personal property, the evidence indicates that such items of her estate as would be within the claimed exemption belonged to her prior to their marriage and remained her separate property.

■ Testimony was offered by respondent of declarations by both Mr. and Mrs. Moore before her death and by Mr. Moore after her death, indicating their understanding of the effect of the prenuptial agreement. Petitioner's objection to this evidence was sustained, and the evidence was taken "under the rule" (ORS 17.045). While the case is tried anew here (ORS 19.120

and 115.010), and this evidence is available for consideration, we think the agreement is not so ambiguous as to require resort to parol evidence for interpretation (ORS 41.740). In any event, the testimony adds little beyond what the agreement itself says.

Petitioner testified (also under the rule) that he did not know about his right to the homestead or exempt property until after the probate proceeding was started. While this may have been admissible as one of the circumstances under which the agreement was made (ORS 42.220), we think it has little probative value, in view of the plain language of the agreement.

The agreement in question was as follows:

"THIS AGREEMENT, Made and entered into this 11th day of December, 1952, by and between Fred L. Moore hereinafter called the 'husband'm [sic] and Lula Schermerhorn hereinafter called the 'wife',

"W I T N E S S E T H:

"WHEREAS, the parties hereto contemplate intermarriage; and

"WHEREAS, the parties hereto each have considerable separate property and each have children by previous marriages; and

"WHEREAS, the parties hereto desire to keep their properties separate and to leave said properties solely in each case to their own said children by previous marriages;

"NOW, THEREFORE, in consideration of their mutual promises, and the performance thereof and their impending marriage, the parties hereto agree as follows:

"1. The parties hereto agree that the rights and obligations created by this agreement have pecuniary value to each of the parties, and said rights and obligations are accepted by the husband in lieu

of courtesy in the wife's separate estate and by the wife in lieu of dower in the husband's separate estate;

"2. The husband does hereby agree that all his right of courtesy or inchoate courtesy in the wife's separate estate shall be barred;

"3. The wife does hereby agree that all her right of dower or inchoate dower in the husband's separate estate shall be barred.

"4. Each of the parties hereto agrees to make no claim to the separate property of the other party, either during the joint lives of the parties hereto or thereafter, and for the purposes of this agreement the parties hereto agree that their separate property shall be identified as such by being held in the separate name of the husband or wife, as the case may be, and not jointly or as tenants in common or as tenants in the entirety.

"IN WITNESS WHEREOF, the parties hereto have caused this agreement to be executed this 11 day of December, 1952, as below subscribed.

"[Sgd.]   Fred L. Moore
Husband

"[Sgd.]   Lula Schermerhorn
Wife."

Petitioner argues, in substance, that (1) the effect of the agreement is limited only to barring a claim of curtesy on his part; and (2) that if it is construed so as to bar his claim to a probate homestead and exempt property, it would be void as unauthorized by statute and against public policy. Ancillary to the former argument, he contends that the statutes providing for setting aside a probate homestead and exempt personal property should be liberally construed, and conversely that the prenuptial agreement should be strictly construed.

Turning first to the question of interpretation, petitioner urges that because the first three numbered paragraphs of the agreement specifically refer only to dower and curtesy, the general language in the fourth paragraph must likewise be limited to dower and curtesy.

■ The maxim "expressio unius est exclusio alterius," on which petitioner relies, and the somewhat related doctrine of ejusdem generis, are not rules of law, but merely guides in determining intent. They must be harmonized with other rules of construction, among which are the statutory mandates that we may not insert what has been omitted or omit what has been inserted, and where there are several provisions, we must, if possible, construe them so as to give effect to all (ORS 42.230).

■ If the construction urged by petitioner were adopted, the effect would be to nullify the general language in the fourth paragraph of the agreement, because it would then add nothing to the specific language which precedes it. A construction which renders any part meaningless should be avoided, if possible. *Hardin v. Dimension Lumber Co.*, 140 Or 385, 13 P2d 602.

In *State v. Standard Oil Co.*, 61 Or 438, 448, 123 P 40, in discussing the application to statutes of the maxim "expressio unius est exclusio alterius," the court said:

"* * * If there is some special reason for mentioning one, and none for mentioning a second, which is otherwise within the statute, the absence of any mention of the latter will not exclude it. 2 Lewis, Sutherland, Statutory Construction, § 495."

■■ The same qualification exists when the rule is applied to contracts, and we think the parties did have

a special reason for mentioning dower and curtesy with particularity. There are statutory requirements for a premarital agreement to bar dower and curtesy.** From the statement in paragraph one of the agreement that "the rights and obligations created by this agreement have pecuniary value to each of the parties, and said rights and obligations are accepted by the husband in lieu of courtesy  *  *  *  etc.," it is apparent that the parties were attempting to make the agreement one which would qualify as a "pecuniary provision" under ORS 113.440. We express no opinion as to whether or not the agreement does meet the statutory requirement for barring dower or curtesy, since that question is not before us. But the fact that the parties obviously intended it to do so indicates why dower and curtesy received special mention in addition to the general language. Therefore, the fact that dower and curtesy were specifically mentioned does not, of itself, require the conclusion that nothing more was intended to be covered by the general language which follows.

■■ The doctrine of ejusdem generis does not go as far as the maxim "expressio unius est exclusio al-

---

** ORS 113.420. "A woman may be barred of her dower in all the land of her husband by a jointure settled on her with her assent before the marriage if such jointure consists of a freehold estate in land, for the life of the wife at least, to take effect in possession or profit immediately on the death of her husband."

ORS 113.430. "Assent to jointure shall be expressed, if the woman is of the age of 21 years, by her becoming a party to the conveyance by which it is settled, and if she is under that age, by her joining with her father or guardian in such conveyance.

ORS 113.440. "Any pecuniary provision that is made for the benefit of an intended wife, and in lieu of dower, shall, if assented to as provided in ORS 113.430, bar her right to dower in all the land of her husband."

ORS 113.020 (2). "Estates by the curtesy may be admeasured, assigned and barred in the same manner as dower; and, so far as practicable, all other laws of this state applicable to dower shall be applicable, in like manner and with like effect, to estates by the curtesy."

terius.'' While the latter serves to exclude everything not specifically mentioned, the former merely limits general language to things of the same kind as those specifically enumerated. In the present case there is sufficient similarity between dower and curtesy, on the one hand, and a claim to homestead and exempt property, on the other, so that application of the rule of ejusdem generis would not necessarily exclude homestead and exempt property from the operation of the agreement.

■■ Petitioner contends that public policy favors preservation of the surviving spouse's right to homestead and exempt property, and, therefore, an agreement in derogation of those rights must be strictly construed, and a waiver should not be found unless clear and explicit. Assuming that to be so, the law also favors antenuptial contracts, and because of the fiduciary relationship between the parties, they are held to a punctilious standard of performing their agreement. *Newton v. Pickell et al.*, 201 Or 225, 269 P2d 508; Lindey, Separation Agreements and Ante-Nuptial Contracts, pp 643-5.

So far as any constructional preference is concerned, between preserving the statutory rights of the surviving spouse and enforcing the solemn contract of the parties after the death of one of them has rendered it irrevocable, we see little reason in this case to weigh either more heavily than the other. There is no suggestion of fraud, overreaching, or lack of understanding; both parties were mature; each had independent legal advice; each agreed to give up valuable rights in consideration of the other's agreement to do likewise; there are no minor children involved; and each apparently had personal reasons for wanting their property to stay in their respective families. Under

these circumstances, we see no reason why the language should not be given its plain meaning, without construing it either in favor of or against either party.

*Brown v. Miles*, 193 Or 466, 238 P2d 761, is not controlling. In that case the parties had made a post-nuptial property settlement agreement, in contemplation of separation and divorce, which provided that the husband would take the farm and pay the wife one-half the value thereof. The contract was fully performed and the parties separated, but they were not divorced. Some years later they resumed marital relations and continued as husband and wife for over twenty years thereafter until her death. About the time they came back together she acquired a parcel of property, which was the residence of both from then on. After her death he claimed a probate homestead in the residence property against the objection of her devisees who relied on the separation agreement as a bar.

The agreement provided in part:

"It is further stipulated and agreed that in the event of the death of either party hereto prior to the granting of the divorce to either party or having the bonds of matrimony dissolved, that the survivor will not claim as heir to the property that may be owned by the deceased at the time of death and will waive all claim as an heir thereto under the laws of the State of Oregon.

"\* \* \* \* \*

"It is further stipulated and agreed that this contract shall be binding upon the parties hereto and their heirs and that no interest directly or indirectly shall be claimed by either in the property of the other by themselves or any of the heirs or legatees."

This court upheld the widower's claim of homestead on the ground that at the time of the agreement the

parties intended never to live together again as husband and wife and intended merely to settle their rights in the specific property described therein for the purposes of the impending divorce. Neither the resumption of the marriage relationship nor the acquisition of additional property was within the contemplation of the parties at the time the agreement was made. They could have had no intention to waive a homestead right, which depends on the marital relationship, when they did not expect that relationship to continue.

In that case the court construed the general language in the final sentence above quoted as referring only to the claim "as an heir" mentioned in the first-quoted sentence, and pointed out that a probate homestead was not claimed "as an heir," but was paramount to any right of inheritance. We think that construction was proper, under the facts of that case, but it does not necessarily follow that the general language in this case must be limited to dower and curtesy. The language in each agreement must be read in its own context, and with a view to the widely different purposes of the two agreements.

In our view, the agreement in this case indicates that the parties intended to preclude all claims of every kind by either to the property of the other. The reason recited, namely that: "the parties hereto desire to keep their properties separate and to leave said properties solely in each case to their own said children by previous marriages," would be defeated by allowance of the claims in suit just as much (or more) as by allowance of curtesy. It would be difficult to use more comprehensive language than that employed: "Each of the parties hereto agrees to make no claim to the separate property of the other party, either during the joint lives of the parties hereto or thereafter." We hold that

the generality of this language was not cut down by the prior mention of dower and curtesy, and the claims to homestead and exempt property are among those which the parties intended to preclude.

We come now to the question of validity. May the parties to an intended marriage validly contract to waive their statutory rights to homestead and exempt property? In this connection petitioner urges: "(a) That antenuptial agreements are not authorized in this state except as to disposition of personal property, and this agreement makes no such disposition; (b) That antenuptial agreements which release statutory allowances of homestead and exempt property are contrary to public policy."

The first of these arguments is predicated upon the express authorization of prenuptial agreements as to personal property in ORS 108.140†, from which it is contended that a prenuptial agreement as to real property is impliedly prohibited. It is also contended that the final sentence of that statute: "This section shall not invalidate prenuptial agreements entered into prior to August 2, 1951," impliedly invalidates all prenuptial agreements executed subsequent to August 2, 1951, which are not expressly authorized by the provisions of that statute. Since the agreement in question was dated December 11, 1952, petitioner argues that it was within the implied prohibition of the last sentence.

On the other hand, respondent points to the legis-

† ORS 108.140. "A man and woman who are parties to an intended marriage may enter into a prenuptial agreement in writing concerning their respective personal property holdings, and the final disposition thereof, upon such terms and conditions as may be mutually determined. If such intended marriage is consummated, such prenuptial agreement shall be binding upon the parties thereto, their heirs, legal representatives and assigns. This section shall not invalidate prenuptial agreements entered into prior to August 2, 1951."

lative history of ORS 108.140 (ch 591, Oregon Laws 1951) to show that the only purpose of the enactment was to remove a question arising under ch 475, Oregon Laws 1949 (now ORS 113.050 and 113.060), and that it carries no implied prohibitions. Chapter 475, Oregon Laws 1949, gave a surviving spouse an election whether to take under the will of the deceased spouse or to take one-fourth of the decedent's personal property in addition to and not in lieu of dower or curtesy or homestead. The interest thus created on the part of the surviving spouse in the personal property of the deceased spouse was analogous to the right of dower or curtesy in real property. It further provided that such one-fourth interest should be subject to a proportionate part of the debts of the decedent, expenses of administration, etc., but it did not specifically provide that it should be subject to estate or inheritance tax.

At the 1951 session of the legislature, House Bill 338 was introduced by the House Judiciary Committee at the request of the State Treasury Department. The first part of the bill amended ch 475, Oregon Laws 1949, and provided that the one-fourth share of the decedent's personal property, when elected by the surviving spouse, should be subject to a proportionate part of federal estate and state inheritance taxes. The second part of the bill added a new section to the same chapter, providing for prenuptial agreements as to personal property and making such agreements binding if the intended marriage is consummated. Subsequently the committee recommended that House Bills 644 and 645, which were introduced by the committee, be substituted for House Bill 338, and the substitute bills were passed (Senate and House Journal, 1951, pp 725 and 771). House Bill 644 replaced the second portion of House Bill 338 and became ch 591, Oregon

Laws 1951 (now ORS 108.140); and House Bill 645 replaced the first portion of House Bill 338 and became ch 386, Oregon Laws 1951 (now incorporated in subd (2) of ORS 113.050).

We are impressed by the suggestion that the division of House Bill 338 into two separate bills was prompted by the decision of this court in *Adm'r of Veteran's Affairs v. U. S. Nat. Bank of Portland*, 191 Or 203, 229 P2d 276, which held that under the Oregon Constitution, as it then stood, an amendatory act could not introduce matters outside the scope of the title to the original act. The decision in that case was handed down March 20, 1951, while House Bill 338 was in committee, and the substitute bills were introduced April 3, 1951. The House Judiciary Committee had appeared amicus curiae in the case, because of the importance of the question with respect to pending legislation (See 191 Or p 220). It is at least doubtful whether the provision of House Bill 338 with respect to prenuptial agreements would have been within the title to the original ch 475, Oregon Laws 1949, and the committee wisely chose to avoid that question by making it the subject of a separate bill.

We may refer to its setting in the context of the original bill, however, for such help as it may give in determining its underlying purpose. Viewed in this light, we believe the legislative purpose was merely to insure that the surviving spouse's right to one-fourth of the decedent's personal property could be waived by a prenuptial agreement. Without such a provision, it might have been contended that the right to one-fourth of the personal property under ch 475, Oregon Laws 1949, was absolute and not subject to contract or waiver. We do not say that the new provision was

necessary to permit such contract or waiver, but it was an understandable legislative precaution.

■ With this background, we are unable to see in ORS 108.140 any implied prohibition of prenuptial agreements as to real property in general, nor any implied invalidation of all prenuptial agreements after the effective date of the Act except such as were expressly authorized by it. The Act was limited to personal property merely because it was occasioned by a prior act which dealt only with personal property. The last sentence of ch 591, Oregon Laws 1951 (which was added by Senate amendment to H. B. 644) was merely a precaution against any suggestion that the Act invalidated prior agreements, and not itself an invalidation of subsequent ones. If the legislative purpose had been to invalidate any class of prenuptial agreements, or limit their availability, it would have been more natural to say so directly rather than leave it to back-handed implication.

■ Petitioner concedes that ''prior to the passage of the act, prenuptial agreements were effective as to disposition of both personal and real property.'' The right to contract with respect to one's property is not to be taken away lightly. As said by this court in *Morton v. Wessinger*, 58 Or 80, 85, 113 P 7:

> ''* * * All statutes which encroach on the personal or property rights of the individual, are to be construed strictly, and in the absence of express words or necessary intendment or implication, it will be presumed that a statute is not intended to interfere with or prejudice a private right or title: 26 Am. & Eng. Enc. Law (2 ed.) 661.''

■ We conclude that ORS 108.140 does not prohibit the agreement in this case, and there remains only the question whether its application to claims of pro-

bate homestead and exempt property is barred by supervening public policy.

This is a new question in Oregon. While this court has said that the duty to set aside a probate homestead is mandatory, upon due request, and that the rights of the surviving family are deemed superior to those of heirs or creditors (e.g. *Benedict v. Lee*, 198 Or 378, 256 P2d 507; *Jenning v. Jenning*, 197 Or 366, 253 P2d 276; *Brown v. Miles*, supra), no case in this court has involved an attempt to waive such rights by a premarital agreement. Hence those observations were not pertinent to the present question.

Cases from other jurisdictions are far from uniform and apparently reflect fundamental differences in viewpoint as well as different statutory provisions. See 24 CJ 251, Executors and Administrators § 811; 34 CJS 47, Executors and Administrators § 341; 21 Am Jur 563, Executors and Administrators § 321; 29 CJ 998, Homesteads § 482; 40 CJS 737, Homesteads § 250; 26 Am Jur 112, Homesteads § 180; Anno. 25 LRA (NS) 751; Woerner, American Law of Administration (3d ed) § 84; Bancroft, Probate Practice (2d ed) §§ 689, 706, 742.

In some cases the decision has turned upon whether there are minor children. Compare *Phelps v. Phelps*, 72 Ill 545, 22 Am Rep 149, where an attempt to release a widow's award was held invalid because the award was for the joint benefit of the widow and minor child, and *Kroell v. Kroell*, 219 Ill 105, 120 Ill App 76, 76 NE 63, where a prenuptial agreement was held to bar a widow's award, there being no children of the marriage, but each spouse having adult children by a former marriage. In the present case no minor children are involved, and we are not called upon to decide

whether a minor's rights could be affected by a prenuptial agreement of his parents.

In some cases a distinction is drawn depending on the nature of the statutory interest involved. Thus in *Finn v. Grant,* 224 Iowa 527, 278 NW 225, an antenuptial agreement was held to bar the widower's right to a life estate in lieu of a distributive share; whereas in *McMinimee v. McMinimee,* 238 Iowa 1286, 30 NW2d 106, an antenuptial agreement was held not to bar the widow's right to occupy the homestead until it was otherwise disposed of. The latter case may be explainable on the ground that the right of occupancy was not regarded as a property interest and hence it was not within the terms of the antenuptial agreement.

Some of the cases, while announcing a policy against waiver of statutory allowances, were actually decided on the ground that the particular allowance was not within the scope of the agreement. e.g. *McAdams v. McAdams,* 177 Tenn 67, 146 SW2d 140; *Cavener v. Cavener's Estate* (Mo App) 95 SW2d 341.

In some of the cases which upheld antenuptial agreements barring claims by the surviving spouse, the agreement provided that the survivor would receive some specific property or money in lieu of the rights which were relinquished. *In re Devoe's Estate,* 113 Iowa 4, 84 NW 923; *Ditson v. Ditson,* 85 Iowa 276, 52 NW 203; *Peet v. Peet,* 81 Iowa 172, 46 NW 1051. Petitioner attempts to distinguish those cases on the ground that the survivor in this case received no such consideration. However, the same court which decided the foregoing cases apparently did not regard that factor as determinative, because in *Finn v. Grant,* supra, the antenuptial agreement was held to bar the widow's claim when there was only a mutual release and no specific allowance in lieu of the renounced

claim. Marriage itself is ordinarily sufficient consideration to support an antenuptial agreement, and in the present case where each had separate property, we think the mutual release furnished an additional quid pro quo.

Illustrating the uncertainty in this field, we find the editors of Corpus Juris Secundum stating that by the weight of authority the widow's right of homestead cannot be waived or renounced by antenuptial agreement (40 CJS 737, § 250 n 82); but that with respect to a widow's allowance or exemption she may, as a general rule, effectually relinquish all such rights by antenuptial agreement (34 CJS 47, § 341 n 50). In the absence of precedent in this state, and with considerable disagreement, if not confusion, in other jurisdictions, we are at liberty to select that rule which is most consonant with the spirit of the Oregon laws.

■ In Oregon the homestead exemption, during the lifetime of the owner, is not an estate but is a personal privilege which must be claimed to be effective, and hence it is subject to waiver. *Crim v. Thompson,* 112 Or 399, 229 P 916.

■ After the owner's death and prior to entry of the order setting aside the exempt property, the surviving spouse's rights can be waived by agreement, *In re Clymer's Estate,* 150 Or 351, 44 P2d 1082, 160 Or 359, 85 P2d 365. Upon entry of the order the surviving spouse acquires a fee simple title, which can be conveyed, *Banfield v. Small,* 139 Or 134, 8 P2d 779.

■ The right to claim exempt property may also be waived by electing to take under a will which contains provisions inconsistent with such a claim. *In re Dunlap's Estate,* 161 Or 93, 87 P2d 225; *In re Potter's Estate,* 154 Or 167, 59 P2d 253.

The case of *Brown v. Miles,* supra, implies that the right to exempt property can be waived by a post-nuptial separation agreement, if the agreement adequately expresses that intention.

■ In view of the various ways in which the homestead exemption can be waived, we cannot say that in this state there is any paramount public policy adverse to such waiver, at least where no minor children are involved. That being the case, we conclude that such waiver can be effected by a prenuptial agreement which is otherwise valid and which, as in this case, clearly intends that result.

It follows that the decision of the trial court denying petitioner's claims must be affirmed.

Edwin J. Welsh, Portland, for the motion.
R. W. Nahstoll, Portland, contra.

KESTER, J.

Petitioner, Fred L. Moore, has filed a motion asking that the cost bill of respondent, Arthur B. Schermerhorn, in the amount of $209.50, be taxed against the estate of Lula M. Moore, deceased.

The mode of procedure in probate is in the nature of a suit in equity (ORS 115.010), and in equity the award of costs and disbursements is within the discretion of the court (ORS 20.030). In the exercise of that discretion costs and disbursements may be awarded against the estate in any probate proceeding contested adversely, although not exceeding the amounts allowable on the trial of a civil action in the same court (ORS 116.560).

In the case of *State Land Board v. Sovenko*, 202 Or 571, 277 P2d 781, we recently reviewed the decisions in this state dealing with the allowance of attorney's fees against an estate in favor of an unsuccessful contestant. In that case the allowance of attorney fees was denied on the ground that the services were not for the benefit of the estate, but only for the benefit of the unsuccessful litigants. That case did recognize, however, that the allowance of statutory costs and disbursements against the estate was discretionary with the court (202 Or at 584).

In the present case the litigation has been primarily of concern to the two individuals involved, but there has perhaps been some incidental benefit to the estate in the resolution of a doubtful question affecting

distribution. While the benefit to the estate has not been sufficient to meet the test for allowance of attorney's fees, it warrants some amelioration of the burden of statutory costs and disbursements.

Since respondent Schermerhorn is the sole beneficiary of the estate, the effect of charging his cost bill against the estate would be to require him to pay it himself. To avoid this circuitous result, the mandate will be recalled, and it will be amended to provide that neither party recover costs or disbursements.